THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JAMES H. HIEBER *et al.*, Defendants-Appellees.

Second District   Nos. 2—92—1012, 2—92—1013 cons.

Opinion filed January 31, 1994.—Modified on denial of rehearing March 2, 1994.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and William L. Browers and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Sam J. Filippo, of Grief, Bus & Blacklidge, P.C., of West Chicago, and James R. Meltreger and Peter A. Regulski, both of Onesto, Meltreger, Regulski & Associates, of Chicago, for appellees.

JUSTICE McLAREN delivered the opinion of the court:

The defendants, James J. Hieber and James H. Hieber, were charged by indictments filed November 15, 1991, with one count each of syndicated gambling (Ill. Rev. Stat. 1989, ch. 38, par. 28—1.1(b) (now 720 ILCS 5/28—1.1(b) (West 1992))) and keeping a gambling place (Ill. Rev. Stat. 1989, ch. 38, par. 28—3 (now codified, as amended, at 720 ILCS 5/28—3 (West 1992))). On March 9, 1992, the defendants filed a motion to quash a search warrant and suppress evidence. Following a hearing, the trial court granted the motion on June 24, 1992, finding a lack of probable cause for the warrant. The State filed a motion to reconsider, which was denied after a hearing on August 10, 1992. The State then filed this appeal seeking reversal of the suppression order. We affirm.

The warrant in question was issued by an associate circuit judge on October 27, 1991, and was executed later that same day. The warrant named the defendants, described them, and commanded a search of their persons and the premises of 628 Ellsworth, Addison. The search was to cover items used in keeping a gambling place, including telephones, records of wagers, records of accounts of bettors, United States currency related to acts of gambling, water soluble paper, and indicia of residency by the defendants.

Detective David Wall, a police officer with the Village of Addison, swore a four-page complaint in support of the warrant, which detailed his role in the investigation of the defendants. Wall declared in his complaint that on September 16, 1991, he spoke to a woman, whom he referred to as Jane Doe, who told him that her son had recently taken an overdose of pills and alcohol and that she believed he did so because he was depressed over owing about $10,000 to a bookmaker named James Hieber. Wall said the woman told him that James Hieber was involved in this activity with his son, whose name was also James Hieber. The woman told Wall that the activity was being conducted from the Hiebers' home in Addison, but she could not provide any telephone numbers being used in the gambling operation. Wall stated that Jane Doe was an ordinary citizen and not a member of the criminal milieu or a paid informant. Wall said that Jane Doe's son would not speak with him.

Wall further stated that he conducted a records check and identified both James H. and James J. Hieber as living at 628 Ellsworth, Addison. On September 17, 1991, Wall said he contacted the Du Page County State's Attorney's office and requested a grand jury subpoena for any and all working telephone lines at the Ellsworth address. Wall said that pursuant to the subpoena he discovered there were four working phone lines at the location. The following day, Wall went to the Ellsworth address and observed a brown vehicle outside the residence. He traced the vehicle to William F. Harley, Sr. Wall said that another vehicle parked in the driveway was traced to James J. Hieber. Wall next contacted the Du Page County State's Attorney's office on or about October 3, 1991, and requested a grand jury subpoena for a special telephone study of two phone lines at the Ellsworth residence. The records from the phone study were received and reviewed by Wall on October 14, 1991. Based on his experience, Wall determined that the high volume, short duration, and clustered timing of calls made to the Ellsworth residence indicated that a bookmaking operation was being conducted there. Wall further stated that it was his experience that bookmakers taking wagers on football games would generally only accept such wagers between 10 a.m. and

noon, then again from 2 to 3 p.m. on Sundays, to correspond with the start of the football games. Monday night calls would be accepted from 6 to 8 p.m., Wall said.

Wall said he showed the phone reports on October 15, 1991, to Detective Sergeant George Wick of the Du Page County sheriff's office vice unit, who told Wall that the pattern of calls was consistent with a gambling operation. Wall stated further that he personally knew that Detective Sergeant Wick was knowledgeable as to the methods used by illegal bookmakers and that Wick has been qualified in court as an expert in bookmaking operations.

Wall stated that on October 15, 1991, the Addison police dispatcher received a call from an anonymous female who stated that James Hieber, who resides somewhere in Addison, is a "middleman" for a bookmaking operation.

On October 16, 1991, Wall contacted the Du Page County State's Attorney's office and requested a grand jury subpoena for a second special phone study for two lines at the Ellsworth residence. The following day, Wall stated, two officers of the Addison police department conducted a surveillance of the Ellsworth residence for two hours prior to the start of a Chicago Bears football game, thought to be a popular subject of bookmaking. During that time, Wall said, the officers observed a car arrive at the location which was registered to James J. Hieber, observed a light on in the basement, and saw several individuals arrive at the residence, go inside for a short time and then leave.

Wall further stated that on October 20, 1991, he and Detective Pekosh of the Addison police department conducted surveillance of the Ellsworth residence and saw James J. Hieber's car parked in the driveway. The officers watched the home for about $3^{1}/_{2}$ hours, during which time Wall observed a person matching James J. Hieber's description walking around outside the residence carrying various articles from his garage to his home. Wall said he observed the subject outside his residence between noon and 2 p.m., "when bookmakers typically will not be answering telephones."

On October 24, 1991, Wall said he confirmed with Illinois Bell Telephone security that one of the lines at the Ellsworth residence had call forwarding and another line did not. Further inquiry by Bell security showed that calls were being forwarded from one of the location's lines to a second line at the home. Wall said that on October 17 another flurry of short-duration calls occurred at the Ellsworth location prior to a professional football game between the Chicago Bears and Green Bay Packers. Wall cited further incidents of frequent, short-duration calls on three other days. The phone records

were copied and attached to the complaint for the search warrant. Wall concluded that "[b]ased upon the above facts I believe that bookmaking activities are taking place at 628 Ellsworth, Addison."

The warrant was issued on October 27, 1991. In their motion to suppress, the defendants claimed that the warrant and affidavit were insufficient on their faces, that the warrant was general and vague, and that the warrant was not based on probable cause. The State argued during the hearing on the motion to suppress that Wall's investigation gathered sufficient evidence of probable cause. The court declared that the statements by Wall could have an innocent explanation and found a lack of probable cause.

■ During the hearing on the motion to reconsider, and again for this appeal, the State argued that the warrant was issued on sufficient probable cause. The State also claimed that, even if probable cause was lacking, the evidence should not be suppressed because of the "good faith" exception to the exclusionary rule announced by the United States Supreme Court in *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, which was adopted by the Illinois Supreme Court in *People v. Stewart* (1984), 104 Ill. 2d 463, 477, and incorporated into section 114—12(b) of the Code of Criminal Procedure of 1963 by the Illinois General Assembly in 1987 (Pub. Act 85—388, eff. September 14, 1987 (amending Ill. Rev. Stat. 1985, ch. 38, par. 114—12(b) (now codified, as amended, at 725 ILCS 5/114—12(b)(1), (b)(2) (West 1992))); *People v. Lipscomb* (1991), 215 Ill. App. 3d 413, 429). The good-faith exception permits the use of evidence obtained by officers acting in good faith and in reasonable reliance on a search warrant issued by a detached and neutral magistrate but which is ultimately found to be unsupported by probable cause. However, the exception is not an unlimited saving cause.

The court in *Leon* detailed four situations in which the good-faith exception would not apply, thus permitting the exclusionary rule to bar use of evidence. These four instances include: (1) when the judge issuing a warrant is misled by information in an affidavit which the affiant knew was false or would have known was false except for his or her reckless disregard for the truth; (2) when the issuing judge wholly abandons his or her judicial role; (3) when the affidavit does not provide the magistrate with a substantial basis for determining the existence of probable cause; and (4) when a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *Leon*, 468 U.S. at 923, 82 L. Ed. 2d at 698-99, 104 S. Ct. at 3421; *People v. Bohan* (1987), 158 Ill. App. 3d 811, 818.

In denying the State's motion for reconsideration, the trial court

found that the third prong of the *Leon* test applied, ruling that the warrant lacked sufficient facts to support a finding of probable cause. To prevail on appeal, the State must show that this determination by the trial court was against the manifest weight of the evidence. (*People v. Galvin* (1989), 127 Ill. 2d 153, 162; *People v. Galdine* (1991), 212 Ill. App. 3d 472, 478.) We believe there was more than sufficient evidence to support the trial court's finding. It was not, therefore, manifestly erroneous.

■ Our supreme court has determined that, when we review the sufficiency of a search warrant complaint, it is only the *probability* of criminal activity, not a *prima facie* showing, which is the standard. (*Stewart*, 104 Ill. 2d at 475-76.) Further, the affidavits or evidence presented in support of the warrant must be tested and interpreted in a commonsense and realistic manner. (*People v. Parker* (1968), 42 Ill. 2d 42, 45.) In deciding the question of probable cause, courts are not to be unduly technical but are to consider the probabilities based on practical considerations of everyday life. (*People v. Thomann* (1990), 197 Ill. App. 3d 488, 495.) This does not, however, mean that a court reviewing a probable cause determination must blindly follow a magistrate's finding. The Supreme Court in *Leon* stated:

> "[R]eviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.' *Illinois v. Gates*, 462 U.S., at 239. 'Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the *bare conclusions of others.*' [Citations.]" (Emphasis added.) *Leon*, 468 U.S. at 915, 82 L. Ed. 2d at 693, 104 S. Ct. at 3416.

■ A commonsense review of the probabilities of what was transpiring at the Ellsworth residence could reasonably lead the trial court in the present matter to determine a lack of probable cause. Certainly, this determination was not against the manifest weight of the evidence. Our review of the record supports the trial court's judgment that Wall's complaint contained insufficient factual basis and corroboration of innocent facts to demonstrate that an illegal gambling operation was being conducted at the Ellsworth location. The trial court observed that the activity being conducted at the location could just as easily be a telemarketing operation and that "not a single phone call is made by the Police Officers corroborating any of the information. Not that it has to be done, but it seems to me that it would be the pivotal aspect of the complaint." This was a reasonable determination.

The only information cited in Wall's affidavit which clearly

indicated that illegal activity was afoot at the Ellsworth location was provided by two anonymous informants.

In *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, the United States Supreme Court adopted what has become known as the "totality of circumstances" test for judging the reliability of an informant's tip used to support a claim of probable cause for a warrant. The court determined that a magistrate considering a request for a search warrant based on an informant's tip should make a commonsense decision based on all relevant circumstances, including the informant's veracity and his or her basis of knowledge. (*Gates*, 462 U.S. at 238-39, 76 L. Ed. 2d at 548, 103 S. Ct. at 2332.) The Illinois Supreme Court adopted the *Gates* "totality of circumstances" test in *People v. Tisler* (1984), 103 Ill. 2d 226, 246.

Wall's complaint contained no clear facts to corroborate the informants' claims. The first informant, Jane Doe, had an obvious bias against the defendants in that she apparently blamed them for her son's attempted suicide. She claimed her son tried to kill himself in a fit of depression over a $10,000 debt he allegedly owed to the defendants. Wall was unable to get Jane Doe's son to speak to him or otherwise corroborate the tipster's claims. The second tip came from a wholly anonymous informant.

Wall's surveillance of the Ellsworth residence, and that of his associate officers, yielded nothing but innocent facts, establishing only that the Hiebers likely lived at the address, there was some activity in the basement on one occasion, several people came and went quickly, and one of the defendants was out of doors for a period of two hours. Even granting Wall his expertise in recognizing patterns followed by bookmakers, it would require a fertile imagination to see anything sinister in all of this.

As for the phone study information cited by Wall in his affidavit, the defendants urge on appeal that this material was illegally obtained and should not, therefore, be considered when reviewing probable cause. In support of this claim, the defendants cite our recent decision of *People v. DeLaire* (1993), 240 Ill. App. 3d 1012. In *DeLaire*, we held that Detective Wall's use of grand jury subpoenas in an investigation of suspected illegal gambling factually similar to the instant case was an illegal usurpation of grand jury process. (*De-Laire*, 240 Ill. App. 3d at 1025-26.) To utilize the grand jury subpoena power, we noted, the State's Attorney should request that the grand jury petition the circuit court to appoint the officer seeking the subpoena as the jury's own investigator pursuant to section 112—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 112—5(b) (now 725 ILCS 5/112—5(b) (West 1992))). *DeLaire*, 240 Ill. App. 3d at 1025.

The State counters that *DeLaire* may not be invoked in the present matter because the legality of the subpoenas was not considered by the trial court. However, when reviewing the propriety of a motion to suppress or quash, an appellate court may consider the entire record and is not confined to evidence presented at the hearing on the motion. (*People v. Walker* (1988), 177 Ill. App. 3d 743, 746.) Further, a prevailing party may raise, in support of a judgment, any reason appearing in the record so long as the new theory does not conflict with a position adopted by the party below and/or the party has not acquiesced to contrary findings. *Walker*, 177 Ill. App. 3d at 746, citing *People v. Sloan* (1986), 111 Ill. 2d 517, 522, and *People v. Franklin* (1987), 115 Ill. 2d 328, 336.

While it is true the legality of the phone study was not considered by the trial court, the defendants did not present evidence inconsistent with or acquiesce to facts contrary to a finding that Wall improperly used grand jury process. The State argues that *DeLaire* may not be invoked in this case because the record on appeal does not indicate what steps Wall took to procure the grand jury subpoenas, leaving open the possibility that he complied with the dictates of *DeLaire*. However, we need not determine whether Wall obtained the phone records improperly because the trial court's finding of no probable cause, reached after considering the phone study as evidence in support of probable cause, was not manifestly erroneous.

This case is distinguishable from *People v. Bohan* (1987), 158 Ill. App. 3d 811, which the State cites in support of its position. In *Bohan*, we overturned the trial court's grant of a suppression order and accepted the State's contention that the good-faith exception of *Leon* should operate to bar suppression. We rejected the claim that the affidavit supporting the search warrant in *Bohan* was utterly lacking in indicia of probable cause.

We note that *Bohan* presented a "close question" as to whether probable cause existed to support a search warrant, and that in such cases there is a preference accorded the validity of warrants. (*Bohan*, 158 Ill. App. 3d at 817.) However, we did not determine that probable cause actually existed in *Bohan*, only that the good-faith exception applied because there was sufficient *indicia* of probable cause. In the present matter, we are not met with a close question of probable cause. As we have noted above, there was very little indication of probable cause.

In *Bohan*, a drug case, the anonymous tipster provided police with extensive, precise details about the case, and these details were corroborated by facts gathered independently by the State Police.

The tipster identified a person with the same first name as the defendant and linked him with specific and detailed information to a large cache of marijuana and cocaine. As the trial court pointed out in the present matter, there was no police corroboration of facts gained from surveillance or the phone study.

The State in its brief in the present matter places great emphasis on a phrase from *Bohan* which characterized the third prong of *Leon*: "the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." (*Bohan*, 158 Ill. App. 3d at 818.) The State appears to argue that this strongly worded phrase means that only an extremely obvious or glaring lack of probable cause will suffice to invoke the third prong of *Leon*. However, *Bohan* clearly does not stand for this proposition, and a plain reading of *Leon* makes it clear that "lacking indicia of probable cause" simply means that, if a reasonable examination by a reviewing court would find a clear lack of probable cause, this is sufficient to suppress evidence. As we have pointed out, Wall's affidavit is a conclusory statement based on his own bare conclusions. "[T]he good-faith exception does not apply to a search warrant that is based on a 'bare bones' affidavit." *People v. Reed* (1990), 202 Ill. App. 3d 760, 764.

Also unavailing is the State's contention that the trial court, in denying its motion to reconsider, evinced "an unwillingness to apply the 'good faith' exception." Our review of the trial court's ruling on the motion to reconsider discloses that the court clearly based its rejection of the good-faith claim on the third prong of *Leon*, the lack of indicia of probable cause. The court did indicate that it was uncertain why the fourth prong of *Leon*, a facially flawed search warrant, was part of the test. However, this does not change the fact that the court had a firm basis for rendering its decision, and under the dictates of *Leon* it is necessary to find only one of the four exceptions, not all four, to reject the good-faith exception and permit the suppression of evidence. The trial court's determination was not against the manifest weight of evidence.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS, P.J., and GEIGER, J., concur.