**FIRST DIVISION**
June 28, 2010

No. 1-06-3696

THE PEOPLE OF THE STATE OF ILLINOIS,    )    Appeal from the
                                        )    Circuit Court of
        Plaintiff-Appellant,            )    Cook County.
                                        )
        v.                              )    No. 04 CR 6555
                                        )
MARTINEZ S. LENYOUN,                    )    The Honorable
                                        )    Thomas M. Tucker,
        Defendant-Appellee.             )    Judge Presiding.

JUSTICE GARCIA delivered the opinion of the court.

The circuit court granted the pretrial motion of the defendant, Martinez S. Lenyoun, to quash the warrant authorizing the search of apartment 2E in a six-unit building because the sworn complaint made no showing of probable cause to justify the search. Judge Thomas M. Tucker also ruled that because probable cause to search the apartment was wholly lacking, the evidence seized was subject to suppression, the good-faith doctrine notwithstanding. We understand the State to contend that in light of the deference owed to a judicial determination of probable cause, the warrant is not constitutionally deficient. In the alternative, the State contends the police officers that seized the evidence acted in good-faith reliance on the search

warrant, which precludes suppression. We affirm. The complaint for the search warrant amounted to no more than a "bare-bones" affidavit of probable cause for the search of the defendant's residence. Where probable cause is wholly lacking, the good-faith exception to the exclusionary rule does not apply.

Background

On February 18, 2004, Detective Carlo Viscioni of the Hillside police department filed a complaint for a warrant to search the defendant and his vehicle. The complaint detailed surveillance of the defendant and an individual named Paul Jones for narcotics trafficking beginning on February 2, 2004, by officers from the Maywood police department, the Wheaton police department, and the Hillside police department. The complaint noted that in August 2001, Paul Jones was arrested at an apartment leased by the defendant where officers seized narcotics and weapons. On three different dates in February 2004, surveillance officers observed the defendant depart from 110 Hillside Avenue, Hillside, drive to a location in a nearby municipality, meet an individual on a street, and appear to exchange an item for United States currency.

On February 16, 2004, an individual with whom the defendant had such an exchange was detained shortly thereafter by the Hillside police. That individual, Darryl Cox, was found to be in

2

possession of cocaine, which he claimed to have purchased from the defendant. Mr. Cox stated he arranged to purchase cocaine from the defendant by calling a number the defendant had given him, which Mr. Cox gave to the police. Mr. Cox also identified the defendant from a photo array as the individual that drove to meet him on the street and sold him the drugs.

On February 18, 2004, at approximately 2 p.m., Detective Viscioni filed a complaint for a search warrant with a judge from the fourth municipal district of the circuit court of Cook County. The judge issued a search warrant for the defendant's person and his vehicle. That same day, the defendant was observed leaving 110 Hillside Avenue, Hillside, as he had on the three prior dates before engaging in street exchanges that were described in the complaint for the search warrant. At approximately 6 p.m., Detective Viscioni and fellow officers stopped the defendant in his vehicle. The defendant and his vehicle were thoroughly searched pursuant to the search warrant. No contraband was recovered. The officers did recover a list that contained the word "dope" and four business cards, one of which contained the same telephone number Mr. Cox stated he called to arrange a drug buy. The telephone number corresponded to a cell phone. No information was obtained to connect the cell phone number with apartment 2E, 110 Hillside Avenue, Hillside,

3

Illinois. The defendant's vehicle was registered to 315 S. 28th Avenue, Bellwood, Illinois. Following the execution of the search warrant, the defendant denied Detective Viscioni's request for consent to search apartment 2E at the Hillside address; the defendant denied living in Hillside, though the Illinois driver's license he produced listed 110 Hillside Avenue as his residence. A K-9 unit from the Westchester police department alerted to the interior of the defendant's vehicle and to the $352 the defendant had on his person.

About two hours after the unsuccessful search of the defendant's person and his vehicle, Detective Viscioni returned to the same circuit court judge with a second application for a search warrant. The complaint was approved by an assistant State's Attorney at 7:47 p.m. The complaint for the second warrant was identical to the first except that it added information obtained in the execution of the first warrant of the defendant and his vehicle. The complaint listed the recovery of the business cards, the list with the word "dope," the defendant's driver's license showing the address of 110 Hillside Avenue, Hillside, Illinois, and the alerts by the K-9 unit to the vehicle and to the United States currency recovered from the defendant. The complaint requested a search warrant for the defendant's person and apartment 2E at "110 Hillside Ave,

4

Hillside, Cook County, IL." The warrant was signed on February 18, 2004, and apparently executed immediately thereafter.

On the defendant's motion to quash the search warrant and suppress the evidence, the parties proceeded with argument only before the circuit court. Both parties treated the motion as presenting a question of law only. According to Judge Tucker, the legal argument presented by the defendant was "that the document itself [the complaint for search warrant] did not contain sufficient information to support a search warrant." After oral arguments by counsel, Judge Tucker agreed that the complaint was constitutionally deficient. He ruled the complaint for the second warrant lacked "sufficient specificity for the 2E apartment" to justify a search. A hearing date was given on the State's oral motion for a good-faith finding on the part of the officers executing the search warrant.

At the hearing on the State's motion, a single witness was called. Detective Viscioni testified this case was the first time he had ever applied for a search warrant. Detective Viscioni admitted he did not inform the circuit court judge at the time he requested the second warrant that the execution of the first warrant resulted in no seizure of contraband from the defendant or his vehicle. Detective Viscioni admitted he never saw drugs or had been told by anyone else that "drugs or other

drug paraphernalia" were present in apartment 2E prior to the execution of the second warrant. Detective Viscioni admitted that he had no information that anyone had ever "purchased drugs from the defendant while he was in apartment 2E." Nor did Detective Viscioni ever witness "the defendant take drugs, drug paraphernalia or any other drug related items into or out of that apartment." Detective Viscioni admitted that no one he was aware of "had previously purchased drugs from the defendant or anyone else while at that apartment." Detective Viscioni conceded that no wire taps existed where the defendant was "overheard *** conducting drug activities from apartment 2E." Detective Viscioni conceded that no "undercover buys [were ever made] from the defendant or anyone else from apartment 2E." Finally, Detective Viscioni admitted that on or before the issuance of the second warrant, he never saw "the defendant go into apartment 2E."

Judge Tucker denied the State's motion for a good-faith exception to the exclusionary rule. "I don't believe there is sufficient evidence to support the search. Therefore, the motion is denied."

This timely appeal followed.

### ANALYSIS

The State asserts in the "Issues" section of its brief that

6

the initial issue presented for review by this court is whether "the issuing judge had probable cause to believe the defendant was engaged in criminal activity." This broad language is not an accurate statement of the issue before us. See 210 Ill. 2d R. 341(h)(3). The issue regarding the validity of the search warrant is whether the issuing judge had a substantial basis for determining the existence of probable cause for the issuance of the search warrant. United States v. Leon, 468 U.S. 897, 914, 82 L. Ed. 2d 677, 693, 104 S. Ct. 3405, 3416 (1984); People v. McCarty, 223 Ill. 2d 109, 153, 858 N.E.2d 15 (2006).

We also reject the State's position in its briefs that the circuit court granted the motion to quash the search warrant because the warrant omitted "Hillside" from the address of 110 Hillside Avenue as one of two possible residences for the defendant. The circuit court did not base its ruling declaring the warrant invalid on such an omission. There can be no real dispute that Detective Viscioni, as one of the executing officers, knew that the apartment to be searched is located in Hillside. Any fair reading of the warrant would enable "the officer executing the warrant, with reasonable effort, to identify the place to be searched. [Citations.]" McCarty, 223 Ill. 2d at 149. In fact, at the time of the execution of the first warrant, the defendant produced an Illinois driver's

7

license showing his residence to be 110 Hillside Avenue, Hillside, Illinois. That apartment 2E in Hillside was not specifically listed as a possible residence of the defendant in the complaint did not render the warrant fatally defective; nor did the circuit court so rule.

In any event, it is the judgment of the circuit court that we review. We may uphold the circuit court's judgment that the warrant was invalid and that the evidence seized is subject to suppression on any basis supported by the record, "even if the trial court's reasoning was flawed." People v. Turnage, 251 Ill. App. 3d 485, 489, 622 N.E.2d 871 (1993), aff'd, 162 Ill. 2d 299, 642 N.E.2d 1235 (1994). Accordingly, there is no need to address further the State's differing view of the circuit court's rulings.

Standard of Review

We note the briefs filed by the parties fail to address the standard of review of the issues before us in violation of Supreme Court Rule 341. "The appellant's brief shall contain *** a *** statement of the applicable standard of review *** [with citation to authority] ***." 210 Ill. 2d R. 341(h)(3). The appellee's brief is required to address the standard of review when "the presentation by the appellant is deemed unsatisfactory." 210 Ill. 2d R. 341(i).

8

This omission may be explained by the purely legal rulings by the circuit court. The circuit court ruled on the defendant's motion to quash the search warrant based solely on its review of the sworn complaint for the search warrant. While testimony was heard on the State's motion for a good-faith finding, no issue is raised regarding the import of the testimony itself. We understand the circuit court to have ruled that good-faith reliance by the executing officers on the search warrant was foreclosed when probable cause to search the defendant's apartment was wholly lacking. Both rulings are subject to de novo review by this court. People v. Turnage, 162 Ill. 2d 299, 305, 642 N.E.2d 1235 (1994) ("The purely legal question of whether the good-faith exception applies under these facts is a question of law which we review de novo").

When a trial judge rules that the warrant issued for the search of a residence lacks probable cause, the ruling necessarily involves a determination of the sufficiency of the affidavit that differs from the issuing judge's. In this case, the State appeals the circuit court's legal rulings on both the sufficiency of the affidavit to support the judicial determination of probable cause and on the officer's good-faith reliance on the search warrant. Our de novo review of the former centers on the probable cause determination by the issuing judge.

9

No. 1-06-3696

See McCarty, 223 Ill. 2d at 153 (a reviewing court must decide "whether the magistrate had a ' "substantial basis" ' for concluding that probable cause existed. [Citation.]"). Our review of a judicial determination of probable cause involves " 'great deference' " to the issuing judge. Leon, 468 U.S. at 914, 82 L. Ed. 2d at 693, 104 S. Ct. at 3416. That deference is reflected most prominently in close cases. " '[I]n a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall. ' " Leon, 468 U.S. at 914, 82 L. Ed. 2d at 693, 104 S. Ct. at 3416, quoting United States v. Ventresca, 380 U.S. 102, 106, 13 L. Ed. 2d 684, 687, 85 S. Ct. 741, 744 (1965). We keep in mind that we may not substitute our judgment for that of the judge that issued the warrant. People v Smith, 372 Ill. App. 3d 179, 182, 865 N.E.2d 502 (2007). " '[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review.' " Smith, 372 Ill. App. 3d at 182, quoting Illinois v. Gates, 462 U.S. 213, 236, 76 L. Ed. 2d 527, 546-47, 103 S. Ct. 2317, 2331 (1983).

"Deference to the magistrate, however, is not boundless." Leon, 468 U.S. at 914, 82 L. Ed. 2d at 693, 104 S. Ct. at 3416. The Leon court described three situations where no deference to the issuing judge is owed, one of which is pertinent here. "[R]eviewing courts will not defer to a warrant based on an

10

affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.' " Leon, 468 U.S. at 915, 82 L. Ed. 2d at 693, 104 S. Ct. at 3416, quoting Gates, 462 U.S. at 239, 76 L. Ed. 2d at 549, 103 S. Ct. at 2332.

The State presents its challenge to the circuit court's judgment in two parts: (1) the trial court improperly granted the defendant's motion to quash the search warrant; and (2) in the event the warrant is defective, the officers acted in good faith in executing the warrant, which precludes the suppression of the evidence seized. See 725 ILCS 5/114-12(b)(1), (b)(2)(i) (West 2006). The defendant follows the State's lead in his analysis of the rulings below.

As we determined, the circuit court granted the defendant's motion to quash and denied the State's motion for a finding of good faith as matters of law. The ultimate question before us is whether the evidence seized pursuant to the warrant is subject to suppression under the exclusionary rule even if the warrant is defective. The dispositive issue on the application of the exclusionary rule is whether Detective Viscioni could "have harbored an objectively reasonable belief in the existence of probable cause" to search the defendant's apartment. Leon, 468 U.S. at 926, 82 L. Ed. 2d at 701, 104 S. Ct. at 3422. If belief

in the existence of probable cause is not objectively reasonable, then suppression of the evidence seized is an appropriate remedy. Leon, 468 U.S. at 923, 82 L. Ed. 2d at 699, 104 S. Ct. at 3421.

Whether an individual can harbor a "reasonable belief of the existence of probable cause" also drives our review of the judicial determination of probable cause in the sworn complaint. The two issues--the constitutionality of the warrant and the application of the good-faith exception--are so intertwined that if Detective Viscioni could not harbor a reasonable belief in the existence of probable cause, then the complaint for a search warrant could not have provided the issuing judge with a " 'substantial basis for determining the existence of probable cause.' " Leon, 468 U.S. at 915, 82 L. Ed. 2d at 693, 104 S. Ct. at 3416, quoting Gates, 462 U.S. at 239, 76 L. Ed. 2d at 549, 103 S. Ct. at 2332. In other words, if the former cannot exist from the perspective of the officer executing the warrant, then under our analysis, it necessarily follows that no substantial basis exists for determining probable cause from the perspective of the issuing judge. If neither the issuing judge nor the executing officer could hold an "objectively reasonable belief in the existence of probable cause," we will not upset the suppression order of the circuit court below. See Leon, 468 U.S. at 924-25, 82 L. Ed. 2d at 699-700, 104 S. Ct. at 3421 ("Fourth Amendment

jurisprudence [allows] reviewing courts to exercise an informed discretion in making [the choice between addressing whether a Fourth Amendment violation has occurred and whether the good-faith exception applies]"); People v. Bohan, 158 Ill. App. 3d 811, 818, 511 N.E.2d 1384 (1987) (suppression is warranted when "the affidavit is so lacking in indicia of probable cause as to render [the issuing judge's] belief in its existence entirely unreasonable").  It falls to the State "to prove that exclusion of the evidence is not necessary because of the good-faith exception."  Turnage, 162 Ill. 2d at 313.

Existence of Probable Cause

Ordinarily, determining whether probable cause to search exists is relatively straightforward.  It "means simply that the totality of the facts and circumstances within the affiant's knowledge at [the] time [the warrant is sought] 'was sufficient to warrant a person of reasonable caution to believe that the law was violated and evidence of it is on the premises to be searched.' "  McCarty, 223 Ill. 2d at 153, quoting People v. Griffin, 178 Ill. 2d 65, 77, 687 N.E.2d 820 (1997).  As made clear by the circuit court's rulings below, the dispute between the parties centers on Detective Viscioni's claim that he had probable cause to believe that evidence of the defendant's unlawful possession of a controlled substance was located in the

defendant's residence. For that determination we look to whether the totality of the circumstances set forth in the affidavit demonstrates " ' "there is a fair probability that contraband or evidence of a crime will be found in a particular place." ' " McCarty, 223 Ill. 2d at 153, quoting People v. Hickey, 178 Ill. 2d 256, 285, 687 N.E.2d 910 (1997), quoting Gates, 462 U.S. at 238-39, 76 L. Ed. 2d at 548, 103 S. Ct. at 2332. In this case, the "particular place" to be searched was apartment 2E at 110 Hillside Avenue, Hillside, Illinois.

As we noted, this is an unusual case. Two warrants were issued involving the defendant on the same day by the same judge.

Based on our review of the record, no question exists regarding the validity of the first search warrant. The complaint filed for the issuance of that warrant revealed that two days earlier, officers of the Hillside police department detained an individual in possession of cocaine who related that he purchased the cocaine from the defendant while the defendant was in his car, an encounter observed by surveillance officers. This encounter was similar to other encounters the defendant had days earlier, also observed by surveillance officers. Based on this evidence, a search warrant for the defendant and his vehicle was sought and properly issued. When the warrant was executed, no contraband was recovered. Following the execution of the

14

warrant, the defendant declined Detective Viscioni's request for consent to the search of his purported residence. Within two hours of the failed search for drugs of the defendant and his car, Detective Viscioni returned to the same judge that issued the first warrant seeking a second search warrant, this time for the defendant and apartment 2E.

The second complaint for a search warrant attached the same six pages from the first complaint for search warrant filed earlier in the day. To the second complaint, a seventh page was added detailing the recovery of the nonillegal items during the execution of the first search warrant. The filings for the second warrant mentioned "apartment #2E" only twice more than in the filings for the first warrant. The additional mention in the complaint for the second search warrant for "apartment #2E" concerned the place to be searched. "Detective Carlo Viscioni *** requests the issuance of a search warrant to search *** the 2nd floor apartment #2E." The second new appearance of "apartment #2E" occurred in the second search warrant itself: "the 2nd floor apartment #2E which is a brick building containing 6 apartments located at 110 Hillside Ave, Hillside, Cook County, Il." In all other respects regarding the term "apartment #2E," the second complaint did not differ from the first complaint for a search warrant.

15

Given that the first and second complaints did not differ in the information provided regarding the defendant's residence, it is inherent in the State's position on appeal that the initial search warrant could have properly issued for the defendant's residence as well. Not surprisingly, Detective Viscioni made no such request. Nor are we aware of a published decision where a drug transaction on the street provides probable cause for the search of the drug seller's residence. Cf. People v. Reed, 202 Ill. App. 3d 760, 764, 559 N.E.2d 1169 (1990) (officer testified that in "16 years on the police force, he had never known of a raid or search *** where members of the general public were searched because they happened to be in a specified public place").

Where a successive warrant is sought before the same judge, a question is raised whether in reviewing the second warrant the "great deference" due to a judicial determination of probable cause should apply the second time around. "Unlike a judicial determination of probable cause, the repetitive nature of a warrant is not a matter in which deference to a judge is expected." Turnage, 162 Ill. 2d at 304 (citing appellate court decision, 251 Ill. App. 3d at 491). In any event, the requisite deference due to the judicial determination of probable cause in the issuance of the second warrant turns on the information

16

provided in the second complaint that connects the defendant's criminal activity to his residence. "[R]eviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.' " Leon, 468 U.S. at 915, 82 L. Ed. 2d at 693, 104 S. Ct. at 3416, quoting Gates, 462 U.S. at 239, 76 L. Ed. 2d at 549, 103 S. Ct. at 2332.

As evidence of the defendant's criminal activity, the State points to the drug sale by the defendant to Mr. Cox on February 16, 2004. It cannot be contested that the drug sale constituted probable cause of criminal activity by the defendant. But, as we made clear, that information was set out in the first complaint for a search warrant and properly did not trigger a request for a search of the defendant's residence. To accept a single drug sale conducted from a car by a defendant as probable cause for the search of the defendant's residence would nullify the rule of law that disavows "bare-bones" affidavits to support the issuance of a search warrant. Cf. People v. Hieber, 258 Ill. App. 3d 144, 149-50, 629 N.E.2d 235 (1994) (search warrant properly quashed when information in the supporting affidavit "clearly indicated that illegal activity was afoot at [the residence to be searched]," but that information was provided by two anonymous informants); People v. Damian, 299 Ill. App. 3d 489, 490, 701

17

No. 1-06-3696

N.E.2d 171 (1998) ("John Doe" search warrant quashed when questions raised regarding the reliability of information provided that confidential informant went to the defendant's address and made a drug purchase where it was doubtful that "John Doe" ever appeared before issuing judge).

As the Leon Court made clear, a judicial determination of probable cause for the issuance of a search warrant based on a "bare-bones" affidavit is not entitled to deference by a court of review. " 'Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.' " Leon, 468 U.S. at 915, 82 L. Ed. 2d at 693, 104 S. Ct. at 3416, quoting Gates, 462 U.S. at 239, 76 L. Ed. 2d at 549, 103 S. Ct. at 2332. Nor will a "bare-bones" affidavit provide good-faith cover to an officer executing the search warrant. "Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." Leon, 468 U.S. at 923 n.24, 82 L. Ed. 2d at 698 n.24, 104 S. Ct. at 3420 n.24; Reed, 202 Ill. App. 3d at 764 ("the good-faith exception does not apply to a search warrant that is based on a 'bare bones' affidavit"). This is so because "[a] 'bare bones'

18

affidavit lacks the facts and circumstances from which a magistrate judge can independently determine probable cause." United States v. Restrepo, 994 F.2d 173, 188 (5th Cir. 1993).

The State's contention on appeal that the facts and circumstances set out in the second complaint were sufficient amounts to nothing more than a claim that because probable cause existed that the defendant engaged in at least one drug transaction with Mr. Cox, and the search of the defendant's person and vehicle turned up no contraband, it was reasonable for Detective Viscioni to believe that the contraband was located elsewhere, that is, in apartment 2E.  It would be unprecedented to accept the proposition that a judicial determination of probable cause established by an outdoor drug sale may be shifted to support a successive warrant to search the defendant's residence.  Such a contention would lead inevitably to the predicament based on the "mere commission of a crime" cautioned against by this court:

> "We are mindful that a future court may
> improperly attempt to use this opinion as
> justification for opening up our citizens'
> homes upon the mere commission of a crime and
> an affidavit of a law enforcement officer."
> People v. Beck, 306 Ill. App. 3d 172, 180-81,

19

No. 1-06-3696

713 N.E.2d 596 (1999).

In Beck, we reversed the circuit court's ruling quashing the warrant and suppressing the seized evidence in what might be described as a "close case" from the perspective of the trial court.

> "In granting the motion to quash the
> search warrant, the circuit court stated that
> it failed to find any information in the
> affidavit to indicate the criminal activity
> had taken place inside any of the residences,
> only that records of criminality might be
> kept there.  The court also found that much
> of the collected information about defendant
> was stale."  Beck, 306 Ill. App. 3d at 177.

On de novo review, we disagreed that the information was "stale" because the evidence supported the inference that "the defendant was engaged in a continuing course of criminal conduct."  Beck, 306 Ill. App. 3d at 179.  In assessing whether there was a "nexus" between the defendant's criminal activity and his residences, we noted that the defendant was subject to a joint investigation by state and federal authorities, including the Internal Revenue Service, involving narcotics trafficking and money laundering.  Beck, 306 Ill. App. 3d at 174-75.  IRS records

20

indicated the defendant had not filed an income tax return since 1993, when he declared an annual earning of about $4,000. Beck, 306 Ill. App. 3d at 176. Two confidential sources provided information that the defendant was involved in gang drug operations and had used aliases to purchase numerous properties in Cook County, which the warrant sought to be searched. Beck, 306 Ill. App. 3d at 176. The affidavit supporting the search warrant averred that "evidence of lack of legitimate income, and other records would be located at these addresses." Beck, 306 Ill. App. 3d at 177. Based on the joint federal and state investigation into money laundering and drug dealing, we concluded "that the issuing judge drew reasonable inferences when the judge found probable cause here." Beck, 306 Ill. App. 3d at 179. We concluded that "[t]he affidavit appears sufficient to warrant a person of reasonable caution to believe that the law was violated and evidence of the violation would be located in the premises sought to be searched." Beck, 306 Ill. App. 3d at 179.

The unusual facts of the instant case fall far below the bar set by this court in Beck. To uphold the second warrant in this case would undermine the sanctity of a citizen's home "upon the mere commission of a crime and an affidavit of a law enforcement officer" warned against by the Beck court. Beck, 306 Ill. App.

21

3d at 181. More than the commission of a crime on the street while in a vehicle is required to justify opening up the defendant's home to a search. Where the clear intent of the second warrant was to recover contraband, the sworn complaint for the search warrant must give rise to a reasonable inference that criminal activity was ongoing in the home itself. See People v. Cooke, 299 Ill. App. 3d 273, 279, 701 N.E.2d 526 (1998) (circuit court's judgment suppressing evidence seized pursuant to a search warrant that resulted in charges of weapons possession by a felon and misdemeanor drug possession was reversed where confidential source observed a " 'long gun (shotgun or rifle)' " in the defendant's residence and a handgun carried by the defendant, which made the search warrant at least partially valid). Here, as confirmed by the examination of Detective Viscioni at the good-faith hearing, nothing was ever observed connecting the defendant's drug activity on the street to the defendant's apartment. Nor does the State point us to any facts or circumstances set forth in the second complaint for a search warrant from which the issuing judge could independently determine probable cause that evidence of the defendant's criminal activity was present in his apartment.

The absence of a reasonable inference of criminal activity in the defendant's apartment renders United States v. Pappas, 592

F.3d 799 (7th Cir. 2010), which the State cites as additional authority, inapposite. In Pappas, the court reversed the district court's order quashing the warrant and suppressing the evidence based on the reviewing court's assessment that "the affidavit clearly documented evidence establishing that at least eleven images of child pornography had been sent to Pappas's email account and verifying that Pappas continued to maintain email access (thus indicating continued access to a computer on which child pornography could be stored)." Pappas, 592 F.3d at 802. In the battle of reasonable inferences raised by the facts in the affidavit, the court noted that "an officer could also reasonably believe that the number of email messages containing child pornography sent to Pappas, and the risk inherent in sending even one image of child pornography to anyone other than a willful recipient, was sufficient to establish probable cause for the crime of knowing possession of child pornography." (Emphasis added.) Pappas, 592 F.3d at 802-03. Ultimately, the Seventh Circuit accepted the government's argument "that while it may be questionable whether probable cause supported the issuance of the search warrant, the evidence seized and Pappas's statements are nonetheless admissible under [Leon]." Pappas, 592 F.3d at 801.

Though not cited by the State, the summary in Beck of

Restrepo, 994 F.2d 173, "the court found probable cause to search a drug dealer's residence even though the affidavit did not describe any drug activity at the residence," compels our review. Beck, 306 Ill. App. 3d at 178. In Restrepo, the defendants were charged with, among other offenses, conspiracy "to possess more than five kilograms of cocaine with the intent to distribute it." Restrepo, 994 F.2d at 176. The affiant, a special agent from the Drug Enforcement Agency, had more than 11 years of experience investigating large drug traffickers. Restrepo, 994 F.2d at 188. The affidavit described shipments of concrete fence posts containing cocaine to a warehouse leased by Restrepo. Restrepo, 994 F.2d at 188. The warehouse evidenced no legitimate business activity or even telephone service. Restrepo, 994 F.2d at 188. Restrepo attempted to conceal his real name in signing bills of lading for shipments to the warehouse and refused to provide either the address of his business or his residence to a post office clerk. Restrepo, 994 F.2d at 188. "The affiant stated that this behavior[, along with other behavior detailed in the opinion,] is consistent with the actions of drug traffickers who do not wish to be identified or associated with given locations or names during the course of unlawful activities." Restrepo, 994 F.2d at 189. Before the affiant sought the search warrants for the separate residences of the defendants, cocaine had been

24

seized, and other coconspirators had already been detained and had cooperated by making recorded telephones calls to the defendants.  Restrepo, 994 F.2d at 180.  As in Beck, the search of the Restrepo residence was not for contraband itself, but for records or documentary evidence regarding the smuggling operation.  "[The described affidavit] furnished sufficient information to allow the conclusion that a fair probability existed that seizable evidence would be found in Restrepo's house."  Restrepo, 994 F.2d at 189.  Our review of the affidavit supporting the search warrant in Restrepo confirms by contrast that Detective Viscioni's assertions in the second complaint to support the search of apartment 2E amounted to no more than bare conclusions.

That very few cases have upheld the suppression of evidence seized pursuant to a warrant reflects the salient role of deterrence.  "[S]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule."  Leon, 468 U.S. at 918, 82 L. Ed. 2d at 695, 104 S. Ct. at 3418.  The purpose of the exclusionary rule to deter police misconduct has real application in this case because Detective Viscioni both procured the warrant and executed it with fellow officers.  If Detective Viscioni

believed he had "probable cause" to search the defendant's residence based upon the criminal activity of the defendant detailed in the first complaint for a search warrant, he would have sought such a warrant then.  See Turnage, 162 Ill. 2d at 309 (lower courts missed the focus of the good-faith doctrine when the courts examined the conduct of the arresting officer "because he did not procure the warrant at issue").  To sanction a successive search warrant within hours of a failed search pursuant to the first warrant, with no additional information provided connecting the defendant's residence to his criminal activity, will simply provide an incentive to officers to seek an immediate second warrant for the defendant's home as a fall-back search for contraband without the need to develop facts that give rise to a reasonable inference of criminal activity in the home.  Such a process of elimination of places to be searched undermines the express protection to a citizen's home accorded by the federal and Illinois constitutions.  See People v. McPhee, 256 Ill. App. 3d 102, 107-08, 628 N.E.2d 523 (1993), quoting Payton v. New York, 445 U.S. 573, 585, 63 L. Ed. 2d 639, 650, 100 S. Ct. 1371, 1379 (1980), quoting United States v. United States District Court for the Eastern District, 407 U.S. 297, 313, 32 L. Ed. 2d 752, 764, 6 S. Ct. 524, 529 (1972) (" ' "physical entry of the home is the chief evil against which the wording of the

26

Fourth Amendment is directed" ' "); Turnage, 162 Ill. 2d at 306 (to approve successive arrest warrants "would provide police with a 'pocket warrant' *** [for a defendant] already subject to the jurisdiction of a court for the crime charged," undermining a citizen's right to bail under the Illinois constitution). A successive search warrant founded on probable cause for the first warrant would approach the "hated writs of assistance" to allow officers to search for contraband where they please. McPhee, 256 Ill. App. 3d at 108, quoting Payton, 445 U.S. at 583 n.21, 63 L. Ed. 2d at 649 n.21, 100 S. Ct. at 1378 n.21. With no recovery of contraband from the execution of the first warrant and the defendant's refusal to consent to a search of his residence, Detective Viscioni was left with two choices: continue his investigation for additional information to connect the defendant's criminal activity with his residence or seek a search warrant of the defendant's residence where the contraband might be found based on essentially the same information relied on for the first warrant. Detective Viscioni elected to do the latter.

The sworn complaint for a second search warrant amounted to no more than a "bare-bones" affidavit, claiming probable cause that evidence of illegal drug dealing by the defendant was located in apartment 2E. No deference is owed to a judicial determination of probable cause based on a "bare-bones"

27

No. 1-06-3696

affidavit; nor will a "bare-bones" affidavit preclude the suppression of seized evidence based on the good-faith doctrine. This is not a close case on probable cause to search a residence. See Hieber, 258 Ill. App. 3d at 151 ("In the present matter, we are not met with a close question of probable cause").

CONCLUSION

The second warrant, executed within two hours after no contraband was recovered from the defendant or his car following the execution of the first warrant, was supported by no more than a "bare-bones" affidavit that probable cause existed for the search of the defendant's apartment. The judge erred in issuing the second search warrant for the defendant's residence and the good-faith doctrine does not apply to the executing officer when neither the judge nor the officer could have held an objectively reasonable belief in the existence of probable cause to search the defendant's apartment. The circuit court properly quashed the search warrant and suppressed the evidence.

Affirmed.

PATTI, J., concurs.

LAMPKIN, J., dissents.

28

No. 1-06-3696

JUSTICE LAMPKIN, dissenting:

I respectfully dissent.  The sworn complaint offered in support of the warrant application to search defendant's Hillside apartment was sufficient to establish probable cause.  Moreover, Detective Viscioni's reliance on the warrant was reasonable, so the good-faith exception to the exclusionary rule would allow admission of the seized evidence.

I do not agree with the majority's statements concerning the issues before this court and the standard of review.  Specifically, the majority asserts the circuit court's rulings on both the sufficiency of the complaint to justify issuing the search warrant for defendant's apartment and Detective Viscioni's good-faith reliance on that search warrant were purely legal rulings and, thus, subject to *de novo* review.

This court's analysis of a circuit court's order suppressing seized evidence begins by reviewing the issuing judge's decision that the complaint was sufficient to justify issuing the search warrant.  People v. Bryant, 389 Ill. App. 3d 500, 511, 906 N.E.2d 129 (2009).  If the issuing judge's decision was correct, then the reviewing circuit court judge erred by ruling that the search warrant was issued without probable cause.  Bryant, 389 Ill. App. 3d at 511.  As a reviewing court, we merely decide whether the issuing judge had a substantial basis for concluding that

29

probable cause existed.  McCarty, 223 Ill. 2d at 153.  We must view affidavits in a commonsense, rather than a hypertechnical, manner and must not substitute our judgment for that of the issuing judge in construing the affidavit for a search warrant. McCarty, 223 Ill. 2d at 153-54; People v. Thomas, 62 Ill. 2d 375, 380, 342 N.E.2d 383 (1975).  Probable cause for a search warrant exists where, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  People v. Sutherland, 223 Ill. 2d 187, 219, 860 N.E.2d 178, 204 (2006). Judges asked to issue a search warrant may draw reasonable inferences from the material supplied.  Beck, 306 Ill. App. 3d at 179.  Furthermore, although it may not be easy to determine when an affidavit demonstrates probable cause, doubtful or marginal cases should be resolved in favor of upholding the search warrant.  Beck, 306 Ill. App. 3d at 179.

When either an appellate court or a fellow circuit court judge reviews the sufficiency of the evidence presented to the judge who issued the search warrant to determine whether sufficient probable cause was present for him to do so, the standard of review employed is deferential.  Bryant, 389 Ill. App. 3d at 513-16.  This deferential standard of review comports with the United States Supreme Court's view that "a grudging or

30

negative attitude by any court reviewing the issuance of a search warrant toward such warrants" is inconsistent with both the desire to encourage the police to use the warrant process before acting and the recognition that the intrusion upon fourth amendment protected interests is less severe once a warrant has been obtained than otherwise might be the case. Bryant, 389 Ill. App. 3d at 516, citing United States v. Ventresca, 380 U.S. 102, 108, 13 L. Ed. 2d 684, 689, 85 S. Ct. 741, 746 (1965); see also Massachusetts v. Upton, 466 U.S. 727, 732-33, 80 L. Ed. 2d 721, 727, 104 S. Ct. 2085, 2088 (1984).

I disagree with the majority's conclusion that the sworn complaint for the search warrant of defendant and his Hillside apartment amounted to no more than a bare-bones affidavit. The majority has briefly summarized the contents of the complaints for the search warrants presented to the issuing judge. However, because I disagree with the majority concerning the sufficiency of the complaint to support the search warrant for defendant's Hillside apartment, more details concerning the complaints are necessary.

Detective Viscioni sought and received approval from an assistant State's Attorney before the first and second search warrants were submitted to the issuing judge. The first warrant to search defendant and his car was supported by Detective

31

Viscioni's seven-page, typed, single-spaced complaint and attached exhibits, which included defendant's lease for an Oak Park residence and five Hillside police reports, dating from May 2000 to December 2002. In supporting his sworn complaint, Detective Viscioni noted his experience as a police officer for over 14 years, his "opportunity to investigate the sale of illicit drugs," and his "well over 60 narcotic arrests." On February 2, 2004, officers from the Hillside, Maywood and Wheaton police departments met concerning informant information and intelligence gathered by the police about the suspects, defendant and Paul Jones.

The complaint explained that previously, in August 2001, Jones was arrested at an Oak Park, Illinois, address and 3,270 grams of cocaine, 95 grams of heroin, and 7 firearms were recovered. Defendant was the leaseholder of that Oak Park address. Currently, Jones resided at a Wheaton, Illinois, address, and defendant, once again, was the leaseholder of that Wheaton address. Both addresses were listed in the complaint. Defendant, however, resided at the 2E apartment in Hillside, Illinois, as established by five Hillside police reports from 2000 to 2002, which linked defendant to apartment 2E. For example, according to a report about an incident in January 2002, the victim of an alleged aggravated assault said he exited

apartment 2W of the Hillside building while defendant and two children exited the apartment across from the victim. According to the victim, defendant pulled out a gun and threatened to shoot the victim if his dog bit defendant's children. The victim called the police, and defendant fled. Furthermore, in November 2002, police went to the 2E Hillside apartment in response to a complaint concerning an argument between defendant and Beverly Mims, who identified defendant as her husband.

The officers established surveillance of the Hillside and Wheaton addresses beginning February 5, 2004. The investigation revealed that defendant's driver's licence was registered to his Hillside address (no apartment number, however, was listed), and he drove a gray Buick Riviera with a license plate registered to him at a Bellwood residence. Furthermore, Jones, in addition to driving a gray Kia, also drove a white Chevrolet Cavalier that was registered to defendant at his Hillside address. Jones's driver's license was revoked.

On the morning of February 5, 2004, defendant arrived at his Hillside apartment in his Riviera, entered the building, then left 25 minutes later and drove two children to a Hillside elementary school. Defendant returned to the Hillside apartment 25 minutes later carrying a small dark bag. The next morning, defendant left the Hillside apartment and again dropped off two

33

children at school. During the next 30 minutes, defendant and a woman drove to a daycare center, the Hillside post office, a Bellwood currency exchange, and a salon. Then, defendant drove back to the Hillside apartment, dropped off the woman, and went to his Bellwood address, where he stayed for about eight minutes before driving back to his Hillside apartment.

On the morning of February 9, 2004, defendant left the Hillside apartment, dropped off a child in Bellwood, stopped at the Hillside post office, then an Elmhurst bank and returned to the Hillside apartment. About one hour later, defendant drove to an alley in Bellwood, where a detective watched a man approach defendant's car and exchange items with defendant. Defendant then drove back to the Hillside apartment. About 90 minutes later, defendant left the Hillside apartment and drove to 105 Eastern Avenue in Bellwood, where an officer observed a man, later identified as Darrell Cox, approach defendant's car and give him money in exchange for items. Defendant then drove back to the Hillside apartment.

At 4 p.m. on February 12, 2004, defendant drove from the Hillside apartment into Bellwood, but returned to the Hillside apartment 35 minutes later, having made no stops. At 6:25 p.m., he left the Hillside apartment and drove to an alley in Bellwood. An officer observed a man approach defendant's car and give him

34

money in exchange for items. Defendant returned to the Hillside apartment, and six minutes later Jones arrived, driving the Chevrolet Cavalier. Jones entered the Hillside apartment building, stayed about 10 minutes, and then returned to his car and drove away. When the police stopped his car, Jones fled through some yards but was apprehended and arrested. He was in possession of $1,151 in small denominations.

At 3:14 p.m. on February 16, 2004, defendant left the Hillside apartment and again drove to 105 Eastern Avenue in Bellwood. An officer and Detective Viscioni observed Darrell Cox approach defendant's car and give him money for an item. After defendant drove off, the officer and Detective Viscioni stopped Cox, who claimed he had purchased only a bag of "weed" from defendant. Detective Viscioni, however, recovered three clear bags of cocaine from Cox. Following his arrest, Cox gave a statement explaining that he has been addicted to cocaine for the past 12 years. He knew defendant as a drug dealer and telephoned him at 708-259-8432 at about 2:16 p.m. on February 16 to buy drugs. He had bought drugs, primarily cocaine, from defendant in this manner for the past year and a half. Cox telephoned the number again at 3:04 p.m. to determine if the drugs were on the way. Shortly thereafter, defendant arrived at Cox's work address, and Cox walked up to the passenger window of defendant's

car and gave him $30 for three bags of rock cocaine.  Cox also identified defendant as his drug dealer from a photographic lineup.

On February 18, 2004, at about 2 p.m., Detective Viscioni obtained a warrant to search defendant's person and his Buick Riviera.  When defendant left his Hillside apartment at about 6 p.m., police officers stopped his car.  Detective Viscioni searched defendant and recovered his driver's license, which listed the Hillside apartment building as his address; a paper with a list that included the word "dope"; and four business cards.  One card listed the same telephone number Cox had called to order cocaine from defendant.  Another card listed "Steve," "708-259-3077," and writing stating an order number.  Furthermore, a police canine alerted to the odor of narcotics in defendant's car and on money ($352) recovered from him.  Detective Viscioni added all the above information to his sworn complaint for the issuance of a second warrant and, about two hours later, obtained the warrant to search defendant and his 2E Hillside apartment.

When examining the sufficiency of a complaint for a search warrant, courts assess the totality of the circumstances.  Bryant, 389 Ill. App. 3d at 520.  To determine probable cause, a

sufficient nexus between a criminal offense, the items to be seized, and the place to be searched must be established. McCoy, 135 Ill. App. 3d at 1066. When there is no direct information to establish a nexus, reasonable inferences may be entertained to create the nexus. McCoy, 135 Ill. App. 3d at 1066. Contrary to defendant's argument on appeal, courts do not always require observance of a drug sale at the residence to support the inference that contraband will be found at the residence. Restrepo, 994 F.2d at 187-89 (the court found probable cause to search a drug dealer's residence even though the affidavit supporting the warrant did not describe any drug activity at the residence).

Here, although each piece of information presented to the issuing judge might not have provided much weight when assessed on an individual basis, the collective weight of the information in the complaint clearly gave rise to a fair probability that contraband or evidence of a crime would be found at defendant's Hillside apartment. Specifically, the police established a connection between defendant and Jones, who lived at a residence leased by defendant and drove a car registered to defendant. Moreover, when the police arrested Jones after he went inside defendant's Hillside apartment building for only 10 minutes, Jones was in possession of a suspicious amount of cash and had

37

attempted to flee from the police.

Furthermore, the officers watched defendant engage in four suspected drug sales from his car directly after driving from his Hillside apartment. In all those transactions, defendant drove to predesignated locations, whereupon men approached his car and gave him money in exchange for items he dispensed through his car window. Two of the four transactions occurred in alleys. After officers observed Cox engage in two such transactions with defendant, Cox was arrested and three bags of rock cocaine were recovered from him. He gave a statement explaining that he has been addicted to cocaine for several years and knew defendant as a drug dealer. Cox regularly bought cocaine from defendant for over one year by calling a certain telephone number to place an order and then meeting defendant's car at a designated location. When the officers searched defendant's car, a police canine alerted to the odor of cocaine in the car and on defendant's money. The officers also recovered a business card with the same telephone number Cox always used to place his order for narcotics. That business card corroborated Cox's statement concerning defendant's *modus operandi* for selling drugs.

The majority discounts the items recovered from the car search and complains that the second warrant to search defendant's Hillside apartment was based on the same information

the officers had relied upon for the first warrant to search defendant's car. I disagree. After the car search, the officers knew that the odor of cocaine was present in the car. Moreover, the officers now had a business card that corroborated Cox's statement concerning defendant's operation for selling drugs. That additional information provided an important link to the suspicious activity the officers had observed emanating from defendant's Hillside apartment. Specifically, the corroboration of Cox's statement and defendant's continuing course of illegal conduct after driving directly from his Hillside apartment led to the reasonable inference that if defendant did not keep the drugs in his car, then he kept the drugs at his Hillside apartment, despite the presence of young children at that residence.

Far from a bare-bones affidavit, Detective Viscioni's sworn complaint presented specific descriptions of defendant's alleged drug sales and details about the times he drove directly from his Hillside apartment to those drug sales. The complaint established that a nexus existed between defendant's Hillside apartment and the facts indicating that he was engaged in an ongoing course of criminal conduct. Based on the totality of the information provided, the issuing judge here drew reasonable inferences when he found probable cause to search defendant's Hillside apartment. The sworn complaint was sufficient to

39

warrant a person of reasonable caution to believe that defendant had violated the law and evidence of the violation would be at his Hillside apartment.

Even assuming, *arguendo*, that the question of probable cause here was a close one, Detective Viscioni's good-faith reliance on the search warrant prevents suppression of the evidence seized from defendant's Hillside apartment. The purpose of the exclusionary rule is to deter police misconduct, not to punish the errors of judges and magistrates. <u>Leon</u>, 468 U.S. at 916, 82 L. Ed. 2d at 694, 104 S. Ct. at 3417. Penalizing the police for the judge's error rather than the police officer's own error does not logically deter a fourth amendment violation. On appeal, we will not disturb a trial court's ruling on a motion to suppress unless the ruling was manifestly erroneous; we accept a trial court's factual findings relevant to an officer's good faith unless the findings are against the manifest weight of the evidence. <u>People v. Walensky</u>, 286 Ill. App. 3d 82, 92, 675 N.E.2d 952, 959 (1996). Whether the good-faith exception applies in the first instance is a purely legal question subject to *de novo* review. <u>Walensky</u>, 286 Ill. App. 3d at 92. Although the majority seems to collapse the analysis, the United States Supreme Court has consistently held that questions concerning whether a search violated the fourth amendment and whether

exclusion is the appropriate sanction for the violation are separate issues. Leon, 468 U.S. at 906, 82 L. Ed. 2d at 688, 104 S. Ct. at 3412.

The good-faith exception provides an exception to the exclusionary rule for evidence obtained by an officer acting in good faith and in reliance on a search warrant ultimately found to be unsupported by probable cause where the warrant was obtained from a neutral and detached judge, free from obvious defects other than nondeliberate errors in preparation, and containing no material misrepresentations. 725 ILCS 5/114-12(b)(1), (b)(2) (West 2004). This exception does not apply in four situations: (1) where the issuing judge was misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing judge wholly abandoned his judicial role; (3) where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where a warrant was so facially deficient that the executing officers could not have reasonably presumed it to be valid. Beck, 306 Ill. App. 3d at 180.

The record here does not reflect that the issuing judge was misled by the information in Detective Viscioni's sworn complaint or that Detective Viscioni knew of should have known that

41

information contained therein was false. Furthermore, nothing indicates that the issuing judge intervened in this proceeding in a manner to portray an abandonment of his neutrality. Moreover, the warrant was not so facially deficient that the executing officers could not reasonably presume it was valid where the warrant described the particular person and place to be searched and the items to be seized. See Leon, 468 U.S. at 923, 82 L. Ed. 2d at 699, 104 S. Ct. at 3421.

Finally, the complaint was not so lacking in probable cause that official belief in the existence of probable cause was unreasonable. As discussed, Detective Viscioni's sworn complaint for the warrant to search defendant's Hillside apartment clearly was supported by much more than a bare-bones affidavit. The complaint contained extensive information about defendant's activities and residences, detailed the results of the surveillance of defendant and Jones, and was deemed by the issuing judge and an assistant State's Attorney to have established sufficient probable cause to search defendant and his Hillside apartment. At the very least, the complaint presented an arguable showing of probable cause, and Detective Viscioni's reliance on the issuing judge's determination of probable cause was objectively reasonable.

## REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

**PEOPLE OF THE STATE OF ILLINOIS**
    **Plaintiff-Appellant,**
**v.**
 **MARTINEZ S. LENYOUN,**
    **Defendant-Appellee.**

### No. 1-06-3696

**Appellate Court of Illinois**
**First District, First Division**

**Filed: June 28, 2010**

### JUSTICE GARCIA delivered the opinion of the court.

**PATTI, J., concurs.**
**LAMPKIN, J., dissents.**

**Appeal from the Circuit Court of Cook County**
**Honorable Thomas Tucker, Judge Presiding**

| | |
|---|---|
| **For PLAINTIFF-APPELLANT** | **Anita Alvarez**<br>**State's Attorney, County of Cook**<br>**James E. Fitzgerald**<br>**Manny Magence**<br>**Matthew Connors**<br>**Assistant State's Attorneys, Of Counsel**<br>**Richard J. Daley Center, Room 309**<br>**Chicago, IL 60602** |
| **For DEFENDANT-APPELLEE** | **The Boyd Law Firm, P.C.**<br>**Three First National Plaza**<br>**70 W. Madison, Suite 1400**<br>**Chicago, IL 60602** |

No. 1-06-3696