THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CHRISTOPHER J. BOHAN *et al.*, Defendants-Appellees.

Second District   Nos. 2—86—0394, 2—86—0395 cons.

Opinion filed July 17, 1987.—Rehearing denied August 31, 1987.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Michael H. Saken, of Saken & Atlas, of Wheeling, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

The State appeals pursuant to Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)) from the trial court's orders granting the motion of defendant, Christopher J. Bohan, to quash search warrant and to suppress evidence illegally seized and the separate motion of a codefendant, Theodore S. Costa, to quash arrest and suppress evidence. The State's appeals were consolidated by this court.

Defendants were jointly indicted for unlawful possession of cannabis with intent to deliver (Ill. Rev. Stat. 1985, ch. 56½, par. 705(e)), unlawful possession of cannabis (Ill. Rev. Stat. 1985, ch. 56½, par. 704(e)), unlawful manufacture of cannabis (Ill. Rev. Stat. 1985, ch. 56½, par. 705(e)), and unlawful delivery of cannabis (Ill. Rev. Stat. 1985, ch. 56½, par. 705(e)). Defendant Bohan was also charged with

possession of a firearm or firearm ammunition without a firearm owner's identification card (Ill. Rev. Stat. 1985, ch. 38, par. 83—2(a). Bohan filed a motion to quash search warrant and to suppress evidence while Costa filed a motion to quash his arrest and suppress evidence. A joint hearing was held on these motions together with the motions to suppress evidence filed by two other codefendants in the indictment who are not parties to this appeal. The motions of the other two defendants were denied.

Testimony at the hearing relevant to the motions filed by Bohan and Costa was as follows. Defendant Costa testified that in the afternoon of May 30, 1985, he was a passenger in a 1980 Toyota owned and operated by Bohan when the State police stopped them. An officer approached and asked for identification. After Costa produced his driver's license, the officer asked Costa to step out of the truck, place his hands on the back of the truck, and spread his legs. Costa complied with the officer's request. The officer frisked him, handcuffed him, put him into a squad car, and drove him back to Bohan's house. The officer did not show him an arrest warrant or a search warrant, and he was not committing a crime.

Trooper Charles R. Allen, an Illinois State Police officer, testified that at 8:30 a.m. on May 30, 1985, while serving as the desk officer, he answered a telephone call from an anonymous male who asked to speak to Sergeant Alexander or Sergeant Mason. Allen told the caller that neither officer was available. The person refused to leave his name and telephone number. The caller then told Allen that the "bust" that Mason and Alexander had made the day before was "small potatoes" compared to what could be found at a place in Lake County. The caller described three buildings located in Lake County near Munson Marine on the east side of the road, and he indicated that he knew that there were 300 pounds of marijuana and one-half pound of cocaine in the buildings and that the marijuana was about to be moved. The caller mentioned that a person named "Chris" lived there or used the premises, that "Chris" drove a Toyota pickup truck, and that he (the caller) knew someone involved in the previous day's "bust." The caller refused to give Chris' last name because he said he was afraid someone would find out who he was and would hurt him. Allen contacted Sergeant Mason and gave him the information about 15 minutes later. Allen indicated that he was unaware that Alexander and Mason had made a "bust" on May 29, 1985, until the caller informed him of it.

James Murray, a special agent for the Department of State Police, testified that on May 30, 1985, he was ordered to conduct a surveil-

lance on a house just south of Munson Marine on the east side of Route 12. The house was one of three buildings on the property, the other two being a garage and another outbuilding. When Murray arrived, he saw a red Ford Mustang and a gray Toyota pickup truck in the driveway. He watched the house from 9:30 a.m. until a warrant was served at approximately 4:15 p.m. During the morning, he saw a white female arrive in a green Buick. She stayed in the house for approximately one-half hour. During this time, Murray knocked on the door but no one answered. At approximately 2:40 p.m., Murray saw a white male leave in the gray pickup truck, drive to a gas station, and then return about 10 minutes later. At approximately 4:05 p.m. on that same day, he saw two males whom he could not identify leave the residence in the pickup truck. The special agent testified that the address of the residence was not visible on the home. He previously had called in the license plate numbers of the vehicles to Sergeant Mason. He saw no illegal activity.

Illinois State police officer Richard Mason testified that after the anonymous caller telephoned Trooper Allen, Allen told Mason of the conversation. Mason then went to talk with an assistant State's Attorney. Trooper Allen had told Mason that the caller gave him a license plate number of a vehicle belonging to "Chris," and, according to Mason, a check of that number revealed that the license plate was registered to Christopher Bohan at an address on Route 12 in Round Lake. Special Agent Murray confirmed that the vehicle bearing the license place number was then parked at that address. Mason ran a check on the two other vehicles parked there and found that they were both registered to Theodore Costa of Wauconda.

At approximately 3:40 p.m., Mason and Alexander left for Bohan's residence to serve a search warrant. However, they proceeded to an area where Bohan had been stopped in his vehicle. Mason served Bohan with a copy of the search warrant and then read it to him. According to Mason, Costa was handcuffed and put into a squad car. Mason took Bohan back to his residence. The search warrant covered three buildings, the grounds, Bohan's pickup truck, Costa's Mustang, and Bohan's person. Mason admitted that at the time the search warrant was prepared they had no reason to suspect Ted Costa.

The next witness, James Griffith, testified that he was a trooper pilot with the Illinois State Police, and he watched Bohan's residence on May 30, 1985. He testified that he saw two men leave the residence about 4 p.m., and the two men put two large boxes into the pickup truck. They then got into the truck and drove off.

The State's last witness was Trooper Roger Schmidt. Trooper

Schmidt testified that he was told warrants had been signed and that the subjects had been seen taking stuff out of a truck and putting it into a nearby dumpster. Schmidt was told to keep Bohan's pickup truck within eyesight, and he followed it down Route 12. Schmidt testified that the vehicle began changing lanes without signaling and that the windshield of Bohan's truck was broken. Schmidt pulled the truck over for those traffic violations, and he issued a warning ticket. While he was writing the warning, he was notified that he should detain the vehicle. The passenger, Costa, had not broken any law that he observed. Sergeant Alexander and Sergeant Mason arrived, and they served the warrant on Bohan. According to Schmidt, Sergeant Mason arrested the two men. An inventory of items taken in the search indicates that drugs and drug paraphernalia, among other things, were taken from defendant Bohan's residence.

The complaint for search warrant executed by Sergeant Mason set forth, in pertinent part, that he was involved in the arrest of two individuals on May 29, 1985, in which 18 bags of marijuana were seized; that on May 30, 1985, Trooper Allen received the anonymous telephone call indicating that the "bust" the night before in Wauconda was small compared to the "money man Chris," who was behind the whole thing, that Chris had 300 pounds of marijuana and one-half pound of cocaine ready to be moved, that Chris lived on the east side of Route 12, south of Munson Marine, where there were three brown buildings, that the caller was a friend of one of the families of the boys previously arrested, and that Chris had a Toyota pickup truck with license plate number 940239B; that Mason was familiar with the area of the location of the buildings and they are in fact located six- to seven-tenths of a mile south of Gilmer Road; that license plate number 940239B on the Toyota was registered to Bohan and that surveillance officers told him it was parked at the residence; and that two other vehicles at the residence were determined to be registered to Theodore Costa.

The trial court, in granting defendant Bohan's motion to quash the search warrant and suppress evidence, found no probable cause for the issuance of the search warrant by the issuing judge. Although the State had argued that the officers acted in good faith pursuant to the issuance of a search warrant, citing *United States v. Leon* (1984), 486 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, the trial court only acknowledged this argument and found that where the validity of probable cause is lacking, the warrant is not valid. In granting Costa's motion to quash arrest, the trial court indicated that the police had observed nothing but innocent activity on the part of Costa and

that there was no violation of the law.

Regarding the defendant Bohan, the State contends that the granting of Bohan's motion to quash the search warrant and suppress evidence was error. The State maintains that the affidavit executed by Sergeant Mason stated sufficient facts to support probable cause for issuance of the search warrant, and, even if probable cause is found to be lacking, the "good-faith" exception to searches conducted pursuant to a warrant applies under the circumstances present here.

■ Probable cause for issuance of a search warrant exists if facts set forth in an affidavit would cause a person of reasonable caution to believe that an offense has occurred and that evidence of that offense is in the place to be searched. (*People v. Stewart* (1984), 104 Ill. 2d 463, 476, 473 N.E.2d 1227; *People v. McCoy* (1985), 135 Ill. App. 3d 1059, 1063, 482 N.E.2d 200.) The test for probable cause that involves an informer's tip now relied on by the Illinois Supreme Court (see *People v. Tisler* (1984), 103 Ill. 2d 226, 246, 469 N.E.2d 147) was first set forth in *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, where the United States Supreme Court stated:

"The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." 462 U.S. 213, 238-39, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332.

The "two-pronged test" established in *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584, was rejected in *Gates*, and, instead, the Supreme Court adopted the totality of circumstances analysis. (*Massachusetts v. Upton* (1984), 466 U.S. 727, 728, 80 L. Ed. 2d 721, 724, 104 S. Ct. 2085, 2085-86.) In *People v. McCoy* (1985), 135 Ill. App. 3d 1059, 482 N.E.2d 200, we restated the applicable law in this area:

"The Illinois Supreme Court also abandoned the 'two-pronged test' of *Aguilar* and *Spinelli*. (*People v. Tisler* (1984), 103 Ill. 2d 226, 246, 469 N.E.2d 147.) While the reliability and the basis of knowledge are still examined, they are examined as a whole along with the other facts in the complaint. (*People v. Jones* (1985), 105 Ill. 2d 342, 356-57, 475 N.E.2d 832.) Probable

cause is not to be a determination by a legal technician but instead by a reasonable and prudent person dealing with the practical considerations of every day life. (*People v. Free* (1983), 94 Ill. 2d 378, 400, 447 N.E.2d 218.) Thus, the issuing judge's determination of probable cause for a search warrant should be paid great deference by a trial judge. (*People v. Gacy* (1984), 103 Ill. 2d 1, 21, 468 N.E.2d 1171.) 'Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' (*People v. Stewart* (1984), 104 Ill. 2d 463, 477, 473 N.E.2d 1227, citing *United States v. Ventresca* (1965), 380 U.S. 102, 109, 13 L. Ed. 2d 684, 689, 85 S. Ct. 741, 746.) A reviewing court, however, will not disturb a trial court's ruling on a motion to quash a warrant or suppress evidence unless that ruling is manifestly erroneous. *People v. Reynolds* (1983), 94 Ill. 2d 160, 165, 445 N.E.2d 766." (135 Ill. App. 3d 1059, 1064-65, 482 N.E.2d 200.)

In addition, we note that in *Gates*, the Supreme Court emphasized the authority of the issuing judge "to draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant" (*Illinois v. Gates* (1983), 462 U.S. 213, 240, 76 L. Ed. 2d 527, 549, 103 S. Ct. 2317, 2333), and that police corroboration of innocent details is a sufficient basis to credit the informant's statement that a defendant is engaged in illegal activity. (462 U.S. 213, 243 n.13, 76 L. Ed. 2d 527, 552 n.13, 103 S. Ct. 2317, 2335 n.13).

Application of these rules to the instant case presents us with a close question as to the existence of probable cause. Were we to decide the issue, the rule that doubtful or marginal cases should be largely determined by the preference to be accorded to warrants would be an important consideration. (See *People v. Stewart* (1984), 104 Ill. 2d 463, 477, 473 N.E.2d 1227; *People v. Gacy* (1984), 103 Ill. 2d 1, 21, 468 N.E.2d 1171.) When faced with both the issue of probable cause and the issue of the "good-faith" exception to searches conducted pursuant to a warrant, however, a reviewing court may opt to examine the "good-faith" exception and decide the case on that basis alone if the exception applies. (See 1 W. LaFave, Search & Seizure sec. 3.1(c), at 552 (2d ed. 1984).) We choose this approach, as we conclude that the "good-faith" exception first announced in *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, is clearly applicable under the facts here.

In *Leon*, the Supreme Court modified the exclusionary rule to al-

low the State to use evidence obtained by officers acting in good faith and in reasonable reliance on a search warrant issued by a detached and neutral magistrate, but ultimately found to be unsupported by probable cause. (468 U.S. 897, 919-22, 82 L. Ed. 2d 677, 696-98, 104 S. Ct. 3405, 3418-20; see *People v. Rehkopf* (1987), 153 Ill. App. 3d 819, 824, 506 N.E.2d 435.) The "good-faith" exception was adopted and applied by the Illinois Supreme Court in *People v. Stewart* (1984), 104 Ill. 2d 463, 477, 473 N.E.2d 1227.

■ The Supreme Court in *Leon* emphasized that it was not suggesting that exclusion is always inappropriate in cases where an officer has obtained a warrant and abided by its terms, and declared that exclusion is still called for whenever the officer lacks reasonable grounds for believing that the warrant was properly issued. (*United States v. Leon* (1984), 468 U.S. 897, 922-23, 82 L. Ed. 2d 677, 698, 104 S. Ct. 3405, 3420.) The court listed four such situations: (1) where the judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth (see *Franks v. Delaware* (1978), 438 U.S. 154, 155-56, 57 L. Ed. 2d 667, 672, 98 S. Ct. 2674, 2676); (2) where the issuing judge wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York* (1979), 442 U.S. 319, 60 L. Ed. 2d 920, 99 S. Ct. 2319; (3) where the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable (see *Brown v. Illinois* (1975), 422 U.S. 590, 610-11, 45 L. Ed. 2d 416, 431, 95 S. Ct. 2254, 2265, (Powell, J., concurring in part)); and (4) where a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid (see *Massachusetts v. Sheppard* (1984), 468 U.S. 981, 988-91, 82 L. Ed. 2d 737, 743-45, 104 S. Ct. 3424, 3427-29); *United States v. Leon* (1984), 468 U.S. 897, 923, 82 L. Ed. 2d 677, 698-99, 104 S. Ct. 3405, 3421. See generally 1 W. LaFave, Search & Seizure sec. 1.3(f), at 63-73 (2d ed. 1987).

■ While Bohan has made a brief argument on appeal that several of these situations prevent application of the "good-faith" exception, we find these contentions totally without merit. There is no evidence or showing that the issuing judge wholly abandoned his judicial role as argued generally by Bohan; nor is the affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. The affidavit contained details about an arrest the previous day and an anonymous telephone call the next day linking the source of marijuana recovered in the prior arrest to a person named Chris who resided in a specific location. The caller

gave facts indicating familiarity with the prior arrest, with Chris and his home and car, and with the families of the persons arrested. The affidavit further contained corroborating facts of the State police which indicated that Chris lived where the caller stated and that Chris' automobile was at the residence. We cannot find the issuing judge's belief in the affidavit and its indicia of probable cause to be entirely unreasonable. The warrant is clearly not so facially deficient that the executing officers cannot reasonably presume it to be valid. Finally, no alleged false statements in the affidavit were brought to the attention of the trial judge on which a hearing was sought pursuant to *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674. See *People v. Lucente* (1987), 116 Ill. 2d 133, 150, 506 N.E.2d 1269.

■ Thus, even assuming probable cause for issuance of the search warrant was lacking, there is a sufficient showing by the State that the "good-faith" exception applies under the circumstances present. Although the trial judge made no specific ruling on this point, the record clearly establishes the "good-faith" reliance by the officers on the search warrant issued by a judge.

For these reasons, we conclude that the order of the circuit court granting Bohan's motion to quash the search warrant and suppress evidence is manifestly erroneous and is reversed.

■■ We address next the State's contention that the trial court erred in granting the defendant Costa's motion to quash his arrest and suppress evidence. The State assumes that the trial judge's failure to elaborate on his determination to grant Costa's motion to suppress must mean that the trial judge improperly granted the motion on the basis of his finding that the search warrant was invalid. The State's argument is that Costa has no standing to challenge the search of the three buildings which revealed the marijuana because Costa did not advance any argument that he enjoyed a reasonable expectation of privacy in those buildings. Furthermore, even if Costa's arrest was illegal, the State posits that the evidence obtained in the search of Bohan's home and from the other two defendants and their vehicle was not the fruit of Costa's illegal arrest.

In his brief, Costa asserts that the State apparently does not understand what evidence was to be suppressed and indicates that it was the fingerprint evidence taken from Costa pursuant to his illegal arrest that was being sought to be suppressed. Those fingerprints, according to Costa, were the only evidence linking him to the marijuana, as his fingerprints were found on the outside of some bags of marijuana.

It is clear from Costa's motion to quash his arrest and suppress evidence that the sole basis of the motion and his argument to the trial judge was that he was arrested without a warrant and without probable cause. Inasmuch as the trial judge briefly stated that he found nothing but innocent activity on the part of Costa and then granted Costa's motion, we are confident that the motion was granted for lack of probable cause to arrest and the absence of an arrest warrant. Further, the State has not presented any argument in its appellate brief to support a contention that there was probable cause to arrest Costa. An unargued issue constitutes a waiver of the review of the merits of that issue. Thus, Costa's motion to quash his arrest and suppress evidence was properly granted on that basis by the trial court and is affirmed.

■ The apparent disagreement in the briefs concerns exactly what evidence pertaining to Costa is suppressed as a result of the finding of an illegal arrest. Generally, statements and physical evidence seized or gained as a result of an illegal arrest are suppressible as "fruit of the poisonous tree" where there are no intervening events to break the connection between the illegal detention and the evidence obtained as a result. (See *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407; 4 W. LaFave, Search & Seizure sec. 11.4, at 369-72 (2d ed. 1987).) However, the trial judge made no specific finding as to what evidence was suppressed, and neither Costa nor the State attempted to clarify this until they raised the point on appeal. The record does not precisely indicate what evidence was obtained resulting from Costa's arrest. Costa represents on appeal that the only evidence which linked him to the seized marijuana was his fingerprints on the outside of some of the bags which contained the marijuana. He further asserts that these fingerprints were matched to "those taken from [him] following his arrest" and that is what the trial court intended to suppress. The State replies that if the arrest is illegal, this justifies only the suppression of any fingerprint cards taken at the time of his arrest, and any other means available not resulting from his arrest can be used to connect the marijuana bags to him.

■ Other than the representations of the parties in their appellate briefs, we are unable to determine from this record what evidence was seized resulting from Costa's illegal arrest. Accordingly, we remand to the circuit court for this determination. We note that there is no indication in the record that the bags of marijuana were seized as a result of Costa's illegal arrest. In addition, if it is determined that Costa's fingerprint card was obtained after his illegal arrest and

was used to make an identification match with fingerprints on the bags of marijuana, the fingerprint card and identification evidence resulting therefrom should be suppressed. Whether any other proper means to match the fingerprints on the bags of marijuana with Costa's may be available, such as through a prior fingerprint card, or whether the identification evidence is otherwise attenuated from the illegal arrest are questions not currently reviewable on the record before us and must be resolved in the court below upon remand.

Reversed in part, affirmed in part and remanded.

UNVERZAGT and WOODWARD, JJ., concur.