# Illinois Official Reports

## Appellate Court

*People v. Kornegay*, 2014 IL App (1st) 122573

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SIDNEY KORNEGAY, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-2573 |
| Filed | May 23, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for unlawful use of a weapon by a felon and two counts of unlawful possession of heroin where the two possession counts were merged under the one-act, one-crime doctrine and then the trial court *sua sponte* merged the remaining possession count with defendant's conviction for the weapon offense, the appellate court rejected defendant's contention that his counsel was ineffective in failing to move to quash the search warrant and suppress evidence, affirmed the conviction for unlawful use of a weapon by a felon, reinstated the conviction for unlawful possession of heroin, sentenced defendant to three years' imprisonment to be served concurrently with the five-year sentence for possession of heroin, and adjusted the fines, fees and costs imposed to correct various errors. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-19251; the Hon. Michael Brown, Judge, presiding. |
| Judgment | Affirmed as modified; fines, fees and costs order corrected. |

| Counsel on Appeal | Michael J. Pelletier and Bryon M. Reina, both of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Veronica Calderon Malavia, Assistant State's Attorneys, of counsel), for the People. |
| | |
| Panel | JUSTICE TAYLOR delivered the judgment of the court, with opinion. Presiding Justice Gordon and Justice Palmer concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Sidney Kornegay, was found guilty of unlawful use of a weapon by a felon and two counts of simple possession of heroin, which were merged under the one-act, one-crime doctrine. On appeal, defendant contends his counsel was ineffective for failing to file a motion to quash the search warrant and suppress evidence. Defendant also challenges fees he was assessed and contends he should receive a $5-per-day credit against his fines. We affirm the judgment and correct the fines, fees and costs order.

¶ 2                                    BACKGROUND

¶ 3    Defendant was arrested on November 4, 2011, after the police executed a search warrant for the basement apartment at 1254 North Lockwood Avenue, which was the residence of defendant and his girlfriend, Catoya Robinson. The police recovered a firearm and two straws, each containing a small bag of heroin. The State charged defendant with one count of unlawful use of a weapon by a felon in violation of section 24-1.1(a) of the Criminal Code of 1961 (720 ILCS 5/24-1.1(a) (West 2010)), count I, and two counts of possession of less than one gram of a controlled substance with the intent to deliver, in violation of section 401(d) of the Criminal Code of 1961 (720 ILCS 570/401(d) (West 2010)), counts II and III.

¶ 4    Prior to the search, on November 4, 2011, Chicago police officer Lazaro Altamirano and J Doe, a private citizen, appeared before the circuit court of Cook County and subscribed and swore to a complaint for a search warrant, seeking to search defendant and his residence. In the complaint, Officer Altamirano averred:

"I, P.O. Lazaro Altamirano #2722, have been an officer for the City of Chicago for the past 8 years and am currently assigned to the Narcotics Section of the Organized Crime Division. I have made hundreds of arrests for narcotics related violations, many that have led to felony convictions. On 03 November 2011, I had a conversation with a citizen that I will now refer to as J Doe concerning narcotics sales going on at the location of 1254 N. Lockwood, Chicago, IL., Cook County. I have not

included each and every fact known to me concerning this investigation. I have only included the facts that I believe are necessary to establish probable cause.

J Doe related to me that within the last 48 hours J Doe went to the basement located at 1254 N. Lockwood to purchase ten bags of cannabis from a male black J Doe knows as 'Sidney'. J Doe arrived at 1254 N. Lockwood and entered the front common door of 1254 N. Lockwood. J Doe approached the door leading to the basement residence and knocked on that door. After a short time the door opened and 'Sidney' asked J Doe what J Doe wanted. J Doe stated to 'Sidney' that J Doe wanted to pick up ten bags of 'dro'. 'Dro' being known to J Doe and I as street terminology for packaged cannabis for sale. 'Sidney' then told J Doe to wait by the door and after a short while 'Sidney' returned holding a clear plastic bag that contained large amounts of Ziploc bags each containing suspect cannabis. 'Sidney' then tendered J Doe ten Ziploc bags each containing suspect cannabis and in exchange J Doe tendered 'Sidney' $100.00 United State currency. J Doe related to me that as J Doe left the residence J Doe observed 'Sidney' to still be in possession of that plastic bag and there was still a large number of Ziploc bags each of which contained suspect cannabis. J Doe related to me that those Ziploc bags were identical to the ten 'Sidney' tendered to J Doe. After the above transaction with J Doe, 'Sidney' then re-entered 1254 N. Lockwood.

J Doe related to me that J Doe relocated to an undisclosed location where J Doe smoked some of the 'dro' that J Doe purchased from 'Sidney'. J Doe stated to me that J Doe received the same euphoric sensation from smoking that 'dro' as J Doe has from smoking 'dro' on previous occasions. J Doe related to me that J Doe has purchased cannabis from 'Sidney' on a regular basis for the last month and that 'Sidney' has never denied J Doe cannabis. J Doe related to me that J Doe has been smoking cannabis for the last three years.

J Doe was taken past 1254 N. Lockwood, where J Doe identified that as the residence where J Doe met with 'Sidney' and purchased ten bags of cannabis from within the last 48 hours and on previous occasions. J Doe then pointed at the windows located in front of the basement apartment and stated that this is where 'Sidney' lives. A picture was retrieved utilizing Chicago CLEAR data base system of a male black named KORNEGAY, Sidney I.R. #1714551. KORNEGAY, Sidney is currently paroled to the basement apartment of 1254 N. Lockwood. That picture was shown to J Doe and J Doe then positively identified KORNEGAY, Sidney as the male black that sold J Doe ten bags of cannabis within the last 48 hours. Based upon this information, this officer respectfully requests that a search warrant be issued for KORNEGAY, Sidney, a male black, D.O.B. 17 Dec. 1983, 5'06", 170 Lbs., brown eyes, I.R. #1714551, and the location of 1254 N. Lockwood, basement apartment of a two unit apartment building, Chicago, IL., Cook County.

I Police Officer Lazaro Altamirano swear that J Doe appeared before the undersigned judge and was available for any questions and swore to the contents of this complaint. J Doe's criminal history, including possible pending investigations, if any, have been presented and made available to the undersigned judge."

¶ 5    Upon the presentation of the facts in the complaint and appearance of Officer Altamirano and J Doe, the circuit court judge found that the complaint stated facts sufficient to show probable cause and issued a warrant to search "KORNEGAY, Sidney, a male black, D.O.B/

17 Dec 1983, 5'06", 170 lbs, brown eyes, I.R. #1714551" and "the premises of 1254 N. Lockwood, basement apartment of a two unit apartment building, Chicago IL., Cook County." The search warrant further directed the seizure of instruments, articles, and things which had been used in the commission of, or which constitute evidence of, the offense of unlawful possession of cannabis, including any cannabis, any documents showing residency, any paraphernalia used in the weighting, cutting or mixing of illegal drugs, and any money or any records detailing illegal drug transactions.

¶ 6        At defendant's bench trial on July 6, 2013, the State presented one witness, Officer Altamirano. He testified that on November 4, 2011, around 2 p.m. he was part of a team that was executing a search warrant at 1254 North Lockwood Avenue. Officer Altamirano entered through an open front door and proceeded to the basement apartment, where defendant was coming up the stairs. Officer Altamairano then informed defendant that they were executing a search warrant for the basement apartment and he was named in the search warrant. Defendant was then handcuffed and put in a chair in the living room.

¶ 7        Officer Altamirano further testified that items subject to the warrant were seized. In the kitchen, the officers found two straws each containing a Ziploc bag with suspect heroin inside. They also found a coffee grinder in a box inside a kitchen closet which contained a powdery substance. Officer Altamirano explained that, based on his experience, he believed the substances to be heroin. He also found a bundle of money containing $65. Another officer found an unloaded semiautomatic Beretta with the serial numbers defaced. Finally, he testified he found a debit card with the name Sidney Kornegay in the bedroom and a ComEd bill addressed to Sidney Kornegay at 1254 North Lockwood.

¶ 8        Officer Altamirano testified as to statements made by defendant during the execution of the search warrant. While Officer Altamirano was in the kitchen securing the firearm in a box, defendant, who was still sitting in the living room, stated that the gun had been left by a friend. Once defendant and the recovered items were transported to the Homan Square police station for processing, he was read his *Miranda* rights. In an interview room with Officer Altamirano and Officer Pulaski, defendant stated that he knew he should not have the gun, since he was a convicted felon.

¶ 9        During cross-examination, Officer Altamirano testified that he conducted a surveillance of the apartment building before executing the search warrant. He saw some individuals enter and exit the building. He did not stop these individuals and they did not have anything in their hands that looked like narcotics.

¶ 10       The parties stipulated to the fact that a forensic scientist would testify that there were 0.4 grams of heroin in the two Ziploc bags and that the powder in the coffee grinder was also heroin. After the State's case in chief defendant moved for a directed verdict. The trial court granted a directed verdict as to counts II and III with respect to the intent to deliver. The court explained that what remained was straight possession for counts II and III.

¶ 11       Defendant presented one witness, Catoya Robinson. She testified that she was defendant's girlfriend and was present when the warrant was executed. She testified that they had been living there for four months, and prior to that, Sidney's father, also named Sidney Kornegay, had lived there. She testified that defendant's father was paying the light bill. She testified that on November 4, 2011, a police officer entered the apartment, searched the bedroom and then let in more officers through the back door. Robinson testified she did not have a firearm in the bedroom, but one was in the laundry facility. She explained that her apartment was in front of the basement and the laundry facility was in the back. Robinson

testified she had an unloaded handgun which she did not tell defendant about, and she testified that an officer who was in the bedroom said he found a gun. According to Robinson, he came out with a two-foot-long blue and green water gun. She explained that she had two water guns in her bedroom. Robinson further testified she did not hear defendant make any statements regarding the gun.

¶ 12     During cross-examination, Robinson testified that she and defendant lived with her two children. She explained she had the gun because in 2008, she was stalked by a lady who stabbed her and her boyfriend. She again said she never told defendant about the gun and had no bullets for it. Robinson further testified that she did not know whose heroin was in the kitchen.

¶ 13     After closing argument, the trial court found defendant guilty of unlawful use of a weapon by a felon and two counts of simple possession of heroin. Defendant subsequently filed a motion for a new trial, arguing that the findings of guilt on the possession of heroin counts should be merged under the one-act, one-crime doctrine. The trial court agreed and merged the two possession counts, vacating the finding of guilt under count III. Additionally, the trial court *sua sponte* merged the remaining count of possession of heroin with the finding of guilty on the unlawful use of a weapon by a felon count. After a sentencing hearing on August 7, 2012, the defendant was given a five-year prison sentence for unlawful use of a weapon by a felon. The trial court also imposed certain enumerated fines and fees totaling $600. It is from this order that defendant now appeals.

¶ 14                                                   ANALYSIS

¶ 15     On appeal, defendant argues that he received ineffective assistance of counsel because his trial attorney did not file a motion to quash the search warrant and suppress evidence. He contends that the search warrant was issued without probable cause. Defendant maintains that the tip provided to police was not reliable enough to provide a reasonable suspicion or probable cause to support the warrant. Thus, defendant asserts that had his counsel filed a motion to quash the search warrant and suppress evidence, he most likely would have succeeded on the motion and the outcome of his trial would have been different.

¶ 16     The State responds that defendant's counsel was not ineffective because the police had probable cause to support the issuance of the search warrant. The State further argues that there was probable cause to search defendant's residence based on the reliability of the tip provided by Officer Altamirano's informant and therefore probable cause supports the search warrant. In the alternative, even if we find that probable cause was lacking, the State asserts that the evidence was also properly seized under the good-faith exception to the exclusionary doctrine. Additionally, the State maintains that the fact that the search warrant identified defendant as a parolee constituted fourth amendment justification for the search of defendant and his residence. The State posits that because defendant's rights were not violated, filing a motion to quash the search warrant and suppress evidence would have been futile and defendant's counsel was not ineffective for failing to do so.

¶ 17     A claim of ineffective assistance of counsel is evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Ramsey*, 239 Ill. 2d 342, 433 (2010); *People v. Albanese*, 104 Ill. 2d 504, 525 (1984). Under this test, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and a reasonable probability exists that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. *Ramsey*, 239 Ill. 2d at 433. A defendant's failure to establish either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *People v. Patterson*, 217 Ill. 2d 407, 438 (2005).

¶ 18    Defendant argues that in order to prevail on his ineffectiveness claim, he need not show that the motion to quash the search warrant would have been granted; instead, he must show only that a reasonable probability exists that the motion would have been granted and that the outcome of his trial would have been different.

¶ 19    In a line of cases beginning with *People v. Orange*, 168 Ill. 2d 138, 153 (1995), this court has stated that, in order to establish prejudice where an ineffectiveness claim is based on the failure to file a suppression motion, the defendant must show only that a reasonable probability exists both that the motion would have been granted and that the result of the trial would have been different had the evidence been suppressed. However, later opinions have articulated a more stringent standard, stating that defendant must establish that the unargued suppression motion was "meritorious," *i.e.*, it would have succeeded, and that a reasonable probability exists that the trial outcome would have been different without the challenged evidence. See, *e.g.*, *People v. Harris*, 182 Ill. 2d 114, 146 (1998); *People v. Bailey*, 232 Ill. 2d 285, 289 (2009). Indeed, in *People v. Henderson*, 2013 IL 114040, ¶ 12, our supreme court explicitly disavowed *Orange*, and clarified that where an ineffectiveness claim is based on counsel's failure to file a suppression motion, in order to establish prejudice under *Strickland*, the defendant must demonstrate that the unargued suppression motion is meritorious and that at least a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed. The *Henderson* standard controls in the instant case.

¶ 20    We therefore turn to consider whether the unargued suppression motion in this case was meritorious. Whether or not a motion to quash a search warrant and suppress evidence should be filed in a criminal case is a matter of trial tactics and has little bearing on competency of counsel. *People v. Peterson*, 248 Ill. App. 3d 28, 38 (1993); *People v. Atkins*, 161 Ill. App. 3d 600, 609 (1987). A reviewing court will not extend its inquiry into areas involving the exercise of judgment, discretion, trial tactics or strategy. *Id.* The decision of whether or not to file a motion to suppress is best left to trial counsel's discretion. *Id.*; *People v. Bryant*, 128 Ill. 2d 448, 458 (1989).

¶ 21    Our task on review is simply to ensure that the trial court had a substantial basis for concluding that probable cause existed. *People v. Wead*, 363 Ill. App. 3d 121, 135 (2005); *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983); *People v. Tisler*, 103 Ill. 2d 226, 248 (1984). The trial court, when making a probable cause determination, is to apply standards at least as stringent as those that guide a magistrate in deciding whether to issue a warrant. *Id.* at 236; *People v. Williams*, 147 Ill. 2d 173, 209 (1991) (citing *People v. Adams*, 131 Ill. 2d 387, 398 (1989), and *Tisler*, 103 Ill. 2d at 236). Whether the necessary probable cause exists is governed not by technical legal rules, but rather by commonsense considerations that are factual and practical. *Wead*, 363 Ill. App. 3d at 136 (citing *People v. Mitchell*, 45 Ill. 2d 148, 153-54 (1970)).

¶ 22    Lastly, perhaps the Illinois Supreme Court said it best when the court wrote the following:

> " 'Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to

warrants.' [Citation.] Read in a common-sense and realistic fashion, the affidavits contained sufficient specificity in light of the totality of the circumstances to justify the issuance of the search warrants. There was a substantial basis for the magistrate's finding of probable cause. [Citation.]" *People v. Stewart*, 104 Ill. 2d 463, 477 (1984) (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).

¶ 23    In construing an affidavit for a search warrant, this court must not substitute its judgment for that of the magistrate but, rather, must decide whether the magistrate had a substantial basis to conclude that probable cause existed. *People v. Sutherland*, 223 Ill. 2d 187, 204 (2006). The United States Supreme Court has indicated that "after-the-fact scrutiny by [the] courts of the sufficiency of an affidavit should not take the form of *de novo* review." *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

¶ 24    Defendant argues that the affidavit for the search warrant relied on statements of an informant whose reliability was unestablished and, furthermore, the warrant was based on uncorroborated information. First, defendant points out that the informant's account provided the police with only vague details about the drug sale and that Officer Altamirano corroborated only one easily verifiable fact: the existence of the house at which the informant said the drug sale took place. Defendant further points out that as to the reliability of the unnamed informant in this case, Officer Altamirano received the tip from a single unnamed source with whom the officer had no prior experience.

¶ 25    The State responds that the facts in the complaint were unquestionably sufficient to establish probable cause to believe that defendant committed an offense in his residence and that a search of his person and residence would uncover evidence of that offense. In the complaint, the affiant, Officer Altamirano, stated that on November 3, 2011, he had a conversation with J Doe, a private citizen, concerning narcotics sales occurring at 1254 North Lockwood, Chicago. J Doe revealed that within the last 48 hours, he had gone to the basement apartment at that location to purchase 10 bags of cannabis from "Sidney." J Doe entered the building's front common door, approached the door leading to the basement residence and knocked. After a short time, "Sidney" opened the door and asked J Doe what he wanted. J Doe responded that he wanted to pick up 10 bags of "dro," which was street terminology for packaged cannabis for sale. "Sidney" then left and returned holding a clear plastic bag that contained large amounts of Ziploc bags, and each of the Ziploc bags contained suspected cannabis. "Sidney" then gave J Doe 10 Ziploc bags, each containing suspected cannabis, in exchange for $100. J Doe then left, went to another location and smoked some of the "dro" purchased. J Doe revealed that he got the same euphoric sensation from smoking that "dro" as he had from smoking "dro" on previous occasions. J Doe admitted that he had purchased cannabis from "Sidney" on a regular basis for the last month and that "Sidney" never denied his requests for cannabis. J Doe also admitted that he had been smoking cannabis for the last three years.

¶ 26    The State further argued that the officer corroborated the information by taking the informant past the address 1254 North Lockwood, which the informant identified as the basement residence where he met with Sidney and purchased cannabis on several occasions. The officer also retrieved a picture utilizing Chicago CLEAR database of a black male named "Kornegay, Sidney," who was currently paroled to the basement apartment of 1254 North Lockwood. The picture was shown to J Doe, who identified the defendant as the one who had sold him cannabis. The State further notes that the officer swore in the complaint that the informant appeared before the magistrate and was available for any questions. Where

the informant himself is the affiant to the complaint and he recites facts that he personally observed, a showing of the reliability of the informant is not constitutionally required. *People v. Skinner*, 136 Ill. App. 3d 119, 121 (1985); see *People v. O'Neal*, 40 Ill. App. 3d 448, 450 (1976). When the informant personally appears before the issuing court, such corroboration is unnecessary. *People v. Lyons*, 373 Ill. App. 3d 1124, 1128-29 (2007). The informant in the instant case was also an affiant and appeared before the issuing judge, who was able to make a firsthand assessment of the informant's credibility. In construing an affidavit for a search warrant, a reviewing court must not substitute its judgment for that of the issuing judge but, rather, only decides whether the issuing judge had a substantial basis to conclude that probable cause existed. *People v. Sutherland*, 223 Ill. 2d 187, 219 (2006).

¶ 27    Defendant, nevertheless, argues that a motion to quash the search warrant would have been successful because the complaint failed to establish the informant's reliability. He maintains that the officer did not provide any information about his relationship with the informant nor did he indicate that earlier information provided by the informant to law enforcement officials had ever led to arrests, indictments or convictions.

¶ 28    In support, defendant argues that the United States Supreme Court has recognized that probable cause cannot be established based on an uncorroborated tip from an unidentified informant. In *Florida v. J.L.*, 529 U.S. 266 (2000), an anonymous informant called the police and reported that a young black male who was standing at a specific bus stop and wearing a plaid shirt was carrying a gun. The United States Supreme Court held that the anonymous tip, without more, did not even amount to reasonable suspicion of wrongdoing and, thus, was not sufficient to justify the officer's stop and frisk of the defendant. *Id.* at 274. Applying the holding of *J.L.*, the Illinois Appellate Court similarly found that an anonymous informant's tip was insufficient to provide reasonable suspicion. In *People v. Brown*, 343 Ill. App. 3d 617, 619 (2003), an anonymous caller informed an officer that a named subject was driving to the subject's home with a shipment of drugs and that he kept a gun in his home. The officer arrested the defendant outside his home and a gun and narcotics were recovered from the defendant's home and car. *Id.* at 619-20. The appellate court held that the police lacked reasonable suspicion to stop the defendant because, even though the tip provided the exact identity of the subject, it lacked the requisite indicia of reliability to justify the stop. *Id.* at 626-27.

¶ 29    The State correctly responds that *J.L.* and *Brown* are inapposite because, unlike the case at bar, in *J.L.* and *Brown*, the informants did not appear before a magistrate, the informants did not describe the basis for their knowledge, and the officers did not obtain search warrants. The State further argues that in *J.L.* and *Brown* the informants were truly anonymous, where, in the case at bar, there was nothing anonymous about the informant except that his identity was kept secret in the text of the search warrant. The State argues that it is well established that where "the informant has appeared before the issuing judge, the informant is under oath, and the judge has had the opportunity to personally observe the demeanor of the informant and assess the informant's credibility, additional evidence relating to informant reliability is not necessary." *People v. Moser*, 356 Ill. App. 3d 900, 909 (2005); see also *People v. Phillips*, 265 Ill. App. 3d 438, 448 (1994) (finding that corroboration of an informant's allegations not needed where informant appeared before judge issuing search warrant).

¶ 30    Defendant argues that despite the informant's appearance before the magistrate, no evidence was presented that the informant was actually questioned. However, our federal

counterpart, the Seventh Circuit Court of Appeals, has found it sufficient that the informant was available for questioning before the issuance of the warrant, even if no evidence was presented that the informant was actually questioned. *United States v. Johnson*, 289 F.3d 1034, 1037 (7th Cir. 2002).

¶ 31    In *Johnson*, a police officer and a confidential informant appeared in court before the judge who issued the search warrant. The informant had told the officer that he had observed the defendant manufacturing cocaine at a particular address and that the defendant told him he intended to sell the substance. *Johnson*, 289 F.3d at 1036. The officer corroborated that the defendant was a black male born on the date specified by the informant and also confirmed that a vehicle parked at the address was registered to the defendant. *Johnson*, 289 F.3d at 1036. Although the informant "took an oath and signed an affidavit mirroring the details" in the officer's application for the warrant, the record was "unclear" regarding whether, before issuing the warrant, the judge questioned the informant, whether the informant testified to the court or if the judge otherwise observed the informant's demeanor. *Johnson*, 289 F.3d at 1037.

¶ 32    When the defendant in *Johnson* argued on appeal that the government failed to establish the informant's reliability, the Seventh Circuit disagreed after examining the totality of the circumstances as instructed by the United States Supreme Court's opinion in *Gates. Johnson*, 289 F.3d at 1038-39. The *Johnson* court noted:

> "When the credibility of a [confidential informant] is at issue, our prior cases instruct us to consider several factors, such as the informant's personal observations, the degree of detail given, independent police corroboration of the *** information, and whether the informant testified at the probable cause hearing. [Citations.] No single issue is dispositive; 'a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability.' [Citation.] We emphasize these factors as a means of examining the [informant's] reliability and whether, based upon the facts provided by the [informant], a substantial basis existed for concluding that law enforcement officials would discover evidence of a particular crime in a particular place. [Citation.]" *Johnson*, 289 F.3d at 1038-39 (quoting *United States v. Brack*, 188 F.3d 748, 756 (7th Cir. 1999)).

¶ 33    The defendant in *Johnson* further contended, as does defendant here, that although the informant was present in court, the record did not establish that the magistrate questioned the informant. *Johnson*, 289 F.3d at 1040. While noting that "an on-the-record exchange" between the court and the informant would support a finding of reliability, the Seventh Circuit found such evidence was not required, noting that the informant's presence and ability to be questioned were "themselves indicia of reliability because they eliminate some of the ambiguity that accompanies an unknown hearsay declarant." *Id*. The court further noted that the informant's presence "allows the issuing judge to confront the [informant] if necessary." *Id.* Therefore, we do not find that the lack of an on-the-record colloquy between the magistrate and the informant destroys the reliability established by the informant's presence. The *Johnson* court stated in a footnote, however, that the informant's appearance before the magistrate was only one factor in the *Gates* "totality of the circumstances" analysis. *Johnson*, 289 F.3d at 1040 n.3.

¶ 34    The issuing magistrate's task " 'is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair

probability that contraband or evidence of a crime will be found in a particular place.' " *People v. Smith*, 372 Ill. App. 3d 179, 184 (2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); see also *People v. McCarty*, 223 Ill. 2d 109, 153 (2006).

¶ 35 Noting the factors set out in *Johnson*, we weigh the informant's personal observations, the degree of detail offered and police corroboration of the information against the fact that the record does not establish that the informant testified in support of the warrant. *Johnson*, 289 F.3d at 1038-39. As previously noted, no single factor is determinative, and weakness in one component can be offset by strength in another. The informant told Officer Altamirano that he bought cannabis at 1254 North Lockwood in Chicago from a person named "Sidney." The informant also positively identified a picture of defendant from a police database. As in *Johnson*, the informant in the instant case also admitted using a controlled substance for the last three years. An admission of familiarity with illegal substances bolsters the informant's reliability. See *Johnson*, 289 F.3d at 1039 ("by making statements against his penal interest the [informant] offered another indicium of reliability"); *United States v. Jones*, 208 F.3d 603, 609 (7th Cir. 2000) (such statements supported informant's reliability and credibility). The informant also stated he had purchased "dro" from defendant for the last month, was never denied "dro," and within the last 48 hours had purchased 10 bags for $100.

¶ 36 We find that, despite the lack of proof that the informant was questioned in court, the informant appeared before the magistrate when the warrant was issued and, thus, was available for questioning. The fact that questioning may or may not have occurred does not undermine the magistrate's finding that probable cause existed to issue the search warrant because the informant's very presence supported his or her reliability. See *Johnson*, 289 F.3d at 1040. Taken as a whole, the evidence provided the magistrate with a substantial basis to conclude that probable cause existed to search 1254 North Lockwood. The record supported the magistrate's finding of probable cause. Therefore, defendant's claim does not support an argument that his trial counsel was ineffective for failing to file a suppression motion because any such motion would not have been meritorious and the omission of such a motion did not prejudice defendant. *Smith*, 372 Ill. App. 3d at 182. See *Strickland*, 466 U.S. at 687; *People v. Easley*, 192 Ill. 2d 307, 317 (2000) (to show ineffectiveness of counsel, a defendant must demonstrate both that his attorney's performance fell below a standard of reasonableness and also that the error resulted in an unreliable or unfair proceeding).

¶ 37 Alternatively, even if the complaint for warrant fell short of establishing the informant's reliability and therefore probable cause, the State argues that defendant suffered no prejudice from trial counsel's decision not to file a motion to quash the search warrant and suppress evidence, because the seized evidence would still have been admissible under the good faith exception to the exclusionary rule. See *United States v. Olson*, 408 F.3d 366, 372 (7th Cir. 2004) (the Seventh Circuit, after rejecting the defendant's argument that the complaint for search warrant did not provide enough to establish probable cause, and added: "[i]n any event, the warrant would be saved by the good[-]faith exception"). Defendant responds that the good-faith exception to the exclusionary rule does not apply, since the affidavit in this case was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." (Internal quotation marks omitted.) *United States v. Leon*, 468 U.S. 897, 923 (1984).

¶ 38 In *Illinois v. Krull*, 480 U.S. 340, 348 (1987), the United States Supreme Court noted that the Court had held in *Leon* that "the exclusionary rule should not be applied to evidence obtained by a police officer whose reliance on a search warrant issued by a neutral magistrate

was objectively reasonable, even though the warrant was ultimately found to be defective." In *People v. Stewart*, 104 Ill. 2d 463, 477 (1984), the Supreme Court of Illinois adopted the holding in *Leon* for this state, writing as follows: "Even if one assumes a want of particularity in the affidavits, the agents' reasonable and good-faith belief, although a possibly mistaken one, that the searches were authorized under the warrants, insulated the searches from a motion to suppress."

¶ 39 As this court noted in *People v. Cooke*, 299 Ill. App. 3d 273, 281 (1998), the Supreme Court in *Leon* listed four situations in which the good-faith exception did not apply:

" '(1) where the judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth [citation]; (2) where the issuing judge wholly abandoned his judicial role ***; (3) where the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable [citation]; and (4) where a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid [citations].' " *Cooke*, 299 Ill. App. 3d at 281 (quoting *People v. Bohan*, 158 Ill. App. 3d 811, 818 (1987)).

¶ 40 We agree with the Seventh Circuit's characterization of the *Leon* good-faith exception, in *United States v. Peck*, 317 F.3d 754, 757 (7th Cir. 2003). In that case, the court first noted that a police officer's decision to obtain a search warrant "is *prima facie* evidence that he was acting in good faith." The court further explained as follows:

"To rebut this evidence[, the defendant] must show that the magistrate simply rubber-stamped the warrant application, the officers were dishonest or reckless in preparing the affidavit, or the warrant was so lacking in probable cause that no officer could have relied on it." *Id*.

¶ 41 The State maintains that there is no evidence that Officer Altamirano deliberately or recklessly disregarded defendant's fourth amendment rights. Nor did the officer's actions constitute gross negligence. The State argues that Officer Altamirano subjected his grounds for searching defendant and his residence to judicial scrutiny. Defendant had a severely curtailed expectation of privacy in his person and residence because he was on mandatory supervised release (formerly parole) (MSR) and on home monitoring. The State further argues that the suppression of evidence of crimes committed by a parolee on home monitoring constitutes a cost too heavy for society to endure.

¶ 42 We agree with the State. No colorable argument can be made on this record that the trial judge wholly abandoned his judicial role when he issued the search warrant at issue, and defendant does not so argue. As noted, we have already found that there was probable cause for the issuing of a search warrant; however, even if that were not the case, we would still find the fruits of the search admissible under the good-faith exception.

¶ 43 The State further argues, and we agree, that defendant had a reduced expectation of privacy in his home because he was a parolee who signed an MSR agreement that included a consent-to-search condition. Defendant argues that there is insufficient proof that he signed an MSR agreement. He contends that since there is no record of an MSR agreement, he has not submitted to a diminished standard of privacy. He maintains that because there is no MSR agreement in the record, there is no reason to presume that he signed one. Defendant further argues that his parole status appearing on the face of the complaint for the search warrant fails to prove that he signed an MSR agreement.

¶ 44    In Illinois, prisoners not serving a term of natural life imprisonment will eventually become eligible for MSR (730 ILCS 5/3-3-3(c) (West 2006)), and when eligible for MSR, they are presented with an agreement that sets forth the conditions of their release from the physical custody of the Department of Corrections (730 ILCS 5/3-3-7 (West 2006)). *People v. Wilson*, 228 Ill. 2d 35, 48 (2008). They must sign this agreement and retain a copy in order to secure their release from the physical custody of the Department of Corrections. 730 ILCS 5/3-3-7(c) (West 2006); *Wilson*, 228 Ill. 2d at 48; see also *In re Detention of Powell*, 217 Ill. 2d 123, 128 (2005) (prisoner who refused to sign his MSR agreement was kept in physical custody). Illinois parolees remain in the legal custody of the Department of Corrections for the duration of their MSR. 730 ILCS 5/3-14-2(a) (West 2006).

¶ 45    The State argues that *Samson v. California*, 547 U.S. 843 (2006), is persuasive. Although *Samson* involved the California parole system, we find that the MSR systems of Illinois and California are very much alike in operation and that *Samson* parallels our analysis of a search of an Illinois prisoner on MSR. In *Samson*, the Supreme Court found that the reduced expectation of privacy a parolee has is further diminished by his acceptance of the clear and unambiguous terms of the search condition contained in his parole agreement. *Samson*, 547 U.S. 843. In *Samson*, the United States Supreme Court held that a completely suspicionless search of the parolee on a public street was reasonable because the parolee's diminished expectation of privacy was outweighed by the State's substantial interest in supervising parolees. *Id.* at 850, 852-53. Since *Samson*, many courts have held that there is no difference between the expectation of privacy a parolee has in his person and his residence, provided that the parolee has signed an agreement containing a search condition similar to defendant's search condition. These cases all implement the principle set forth in *Samson* that "a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Samson*, 547 U.S. at 853.

¶ 46    The State correctly notes that MSR agreements contain a broad search condition. Pursuant to section 3-3-7(a), in Illinois, all prisoners must sign an MSR agreement setting forth release conditions and every MSR agreement must include certain conditions set forth in section 3-3-7, including the condition that the parolee "consent to a search of his or her person, property, or residence." 730 ILCS 5/3-3-7(a)(10) (West 2010). Thus, the State maintains, and we agree, that defendant being on mandatory supervised release and on home monitoring had a severely diminished expectation of privacy in his person and residence. We find under the circumstances in the case at bar, defendant, a convicted felon, on home monitoring, signed an MSR agreement and was operating under a diminished expectation of privacy. A prisoner who refuses to sign an MSR agreement will not be released from custody. See *Wilson*, 228 Ill. 2d at 48; see also *Powell*, 217 Ill. 2d at 128 (prisoner who refused to sign his MSR agreement was kept in custody).

¶ 47    In *United States v. Lopez*, 474 F.3d 1208 (9th Cir. 2007), the defendant was a parolee with a search condition that put him on notice that his person, property, and residence were subject to search at any time. *Lopez*, 474 F.3d at 1209. Following *Samson*, the *Lopez* court held that the defendant, as a parolee, did not have an expectation of privacy in his residence that society would recognize as legitimate. *Lopez*, 474 F.3d at 1213. The *Lopez* court held:

    "If *** a parolee has no expectation of privacy in his person, we reason that a parolee has no legitimate expectation of privacy in his residence either, at least when the parolee is present. Any other rule would diminish the protection to society given by

the search condition of parole, permitting search at any time." *Lopez*, 474 F.3d at 1213.

¶ 48     In the instant case, we find that defendant was required to sign and accept a search condition requiring him to consent to a search of his person, property, or residence under his control. Like the defendants in *Samson* and *Lopez*, his status on MSR, coupled with the condition of home monitoring at 1254 North Lockwood, reduced his expectation of privacy in his residence to a level that society would not recognize as legitimate. Accordingly, the special protection normally afforded to an individual's home does not apply to defendant. See *Wilson*, 228 Ill. 2d at 50-51.

¶ 49     Thus, under the circumstances presented in this case, there is no reasonable probability that a motion to quash would have been successful and therefore defendant was not prejudiced by his counsel's failure to file such a motion. His ineffective assistance of counsel claim fails. See *People v. Van De Rostyne*, 63 Ill. 2d 364, 366 (1976) (the method to challenge the constitutionality of a defendant's arrest is through a motion to quash and suppress evidence).

¶ 50     The parties raise several concluding matters. First, the State argues that the trial court's decision to merge defendant's conviction for possession of the controlled substance into his conviction for unlawful use of a weapon by a felon was erroneous. The State maintains that the judge made a finding of guilt on a lesser included offense of possession of less than one gram of heroin. 720 ILCS 570/402(c) (West 2010) ("Any person who violates this Section *** is guilty of a Class 4 felony."). Because a conviction on a Class 4 felony carries a one- to three-year sentencing range (730 ILCS 5/5-4.5-45 (West 2010)), the State contends that we should remand for sentencing on the possession of heroin offense. Defendant agrees that the trial court meant to enter a finding of guilty on the possession of a controlled substance count. However, instead of remanding, defendant argues that we should impose a three-year sentence on count II, to run concurrently with his conviction on count I.

¶ 51     We agree that the judge made a finding of guilty on the possession count. We therefore reinstate defendant's conviction for possession of a controlled substance. See *People v. Yaworski*, 2011 IL App (2d) 090785, ¶ 10; see *People v. Scott*, 69 Ill. 2d 85, 87-88 (1977) (in an appeal by the defendant, the reviewing court may correct an erroneous trial court ruling that one offense merges into another and may remand for sentencing on the former offense so that a complete judgment will have been entered). Since the trial court did not impose a sentence for count II, pursuant to Illinois Supreme Court Rule 615(b)(2) we impose a sentence of three years' imprisonment for possession, to be served concurrently with the sentence for unlawful use of a weapon by a felon and order the clerk of the circuit court to correct the mittimus to reflect a conviction on count II, to run concurrently with the five-year sentence on count I. Ill. S. Ct. R. 615(b)(2) (reviewing court may "set aside, affirm, or modify any or all of the proceedings subsequent to or dependent upon the judgment or order from which the appeal is taken").

¶ 52     On the question of costs, the defendant contends and the State correctly concedes that it was improper to assess the defendant a $5 court system fee pursuant to section 5-1101(a) of the Counties Code (55 ILCS 5/5-1101(a) (West 2012)). The court system fee is only to be paid in the case of a violation of the Illinois Vehicle Code. *Id.* Defendant's offenses do not fall into this category, and so we vacate this fee.

¶ 53     Defendant also challenges the assessment of a court services fee of $25 pursuant to section 5-1103 of the Counties Code (55 ILCS 5/5-1103 (West 2012)). Defendant argues that

the court services fee is only applicable to one of the several offenses enumerated in section 5-1103. 55 ILCS 5/5-1103 (West 2012). The State maintains that the $25 court services fee was properly imposed because the statute authorizing the fee applies to all criminal offenses. We agree with the State. Section 5-1103 of the Counties Code expressly provides that the purpose of this fee is to defray "court security expenses incurred by the sheriff in providing court services." 55 ILCS 5/5-1103 (West 2012). See *People v. Williams*, 2011 IL App (1st) 091667-B; *People v. Adair*, 406 Ill. App. 3d 133, 145 (2010) (based on the encompassing language of the statute and its clear purpose of defraying court security expenses, court rejected the argument that the failure to list the offenses the defendant committed meant that he could not be required to defray the expenses incurred by the sheriff for his court proceedings). Thus, we find the court services fee was properly assessed following the defendant's convictions.

¶ 54 Finally, defendant correctly asserts that he is entitled to a $5-per-day credit for each day spent in custody before he was sentenced. 725 ILCS 5/110-14 (West 2010). Defendant was eligible for 278 days of presentence custody credit for his offenses in this case. While a defendant is allowed a credit of $5 for each day he is incarcerated, the amount cannot exceed the amount of the fines. 725 ILCS 5/110-14(a) (West 2010). Defendant's 278 days in presentence custody are more than sufficient to offset the $80 in fines he was assessed. Defendant maintains and the State agrees that the court miscalculated the total fees imposed on defendant. We adjust the total fees from the imposed $600 to the corrected $500.

¶ 55 CONCLUSION

¶ 56 For the foregoing reasons, we modify the judgment of the circuit court by reinstating defendant's conviction of possession and sentencing defendant to three years' imprisonment, to be served concurrently with his sentence for unlawful use of a weapon by a felon. We affirm the judgment of the circuit court with regard to count I, unlawful use of a weapon by a felon. We affirm the imposition of the $25 court services fee, vacate the $5 court system fee, adjust the total fines imposed by the trial court to $500 and reduce defendant's total assessment to $415.

¶ 57 Affirmed as modified; fines, fees and costs order corrected.